NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-11773

COMMONWEALTH  vs.  JOSIAH H. CANNING.

Barnstable.     January 8, 2015. - April 27, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, & Hines, JJ.

Marijuana.  Medicine.  Controlled Substances.  Search and Seizure, Warrant, Affidavit, Probable cause.  Probable Cause.  Practice, Criminal, Warrant, Affidavit, Motion to suppress.  License.

Complaint received and sworn to in the Orleans Division of the District Court Department on May 30, 2013.

A pretrial motion to suppress evidence was heard by Brian R. Merrick, J.

An application for leave to prosecute an interlocutory appeal was allowed by Gants, J., in the Supreme Judicial Court for the county of Suffolk, and the case was reported by him to the Appeals Court.  The Supreme Judicial Court granted an application for direct appellate review.

Elizabeth A. Sweeney, Assistant District Attorney, for the Commonwealth.
Richard F. Comenzo for the defendant.
The following submitted briefs for amici curiae:
John M. Collins for Massachusetts Chiefs of Police Association, Inc.

Paul R. Rudof, Committee for Public Counsel Services, for Daniel J. Chao & another.

Steven S. Epstein & Marvin Cable for National Organization for the Reform of Marijuana Law.

BOTSFORD, J.  We consider here for the first time the Commonwealth's new medical marijuana law, "An Act for the humanitarian medical use of marijuana," St. 2012, c. 369 (act), which the voters approved in November, 2012.[1]  The central question presented is whether, with the act in effect, police may obtain a search warrant to search a property where they suspect an individual is cultivating marijuana by establishing probable cause that cultivation is taking place or are required to establish probable cause to believe that the individual was not registered, or licensed, to do so.  In accord with cases relating to other types of license regimes, we conclude that, if police seek a warrant to search such a property for evidence of illegal marijuana possession or cultivation, they must offer information sufficient to provide probable cause to believe the individual is not properly registered under the act to possess or cultivate the suspected substance.  In this case, a judge in the District Court allowed the defendant's motion to suppress evidence seized by police during a search of the defendant's property conducted pursuant to a warrant in May of 2013, after

---

[1] The measure was placed before the voters at the Statewide election held November 6, 2012, pursuant to art. 48, The Initiative, Part V, § 1, amended by art. 81, § 2, of the Amendments of the Massachusetts Constitution.

the act went into effect.  We agree with the motion judge that the affidavit filed in support of the search warrant application demonstrated probable cause that the defendant was cultivating marijuana at the property, but that, in light of the act, the affidavit failed to establish probable cause to believe that the defendant was not authorized to do so and therefore was committing a crime.  We affirm the order allowing the motion to suppress.[2]

Background.  On May 30, 2013, a three-count complaint issued from the Orleans Division of the District Court Department charging the defendant, Josiah H. Canning, with possession with the intent to distribute marijuana, G. L. c. 94C, § 32C (a); distribution of marijuana, G. L. c. 94C, § 32C (a); and conspiracy to violate the drug laws, G. L. c. 94C, § 40.[3]  The complaint's issuance followed a search of the defendant's property in Brewster conducted May 30, 2013, pursuant to a search warrant issued on May 29.  The affidavit submitted by Detective Christopher Kent of the Yarmouth police

---

[2] We acknowledge the amicus briefs submitted by Daniel J. Chao and Shawn P. Kelly and by the National Organization for the Reform of Marijuana Laws, in support of the defendant; and the Massachusetts Chiefs of Police Association, Inc., in support of the Commonwealth.

[3] For reasons that have not been explained, the defendant was not charged with unlawful cultivation of marijuana.  There does not appear to be any evidence of distribution in this case.

department in support of the warrant application recited the following facts.

During the week of May 19, 2013, Kent met with a confidential informant, who told Kent that the owner of certain property in Brewster (property) -- whom Kent later determined from town records to be the defendant -- and another male were involved in an indoor "marijuana grow" operation located at the property.[4]  On May 21, Kent and another detective observed the property from a nearby driveway, and noticed that windows of the addition to the house on the property were obscured by dark material, saw an aluminum flexible hose protruding out of one of the windows, and also observed a pickup truck registered to the defendant in front of the house.  On May 24 and 28, Kent and one or more additional police officers returned to observe the property; on both occasions, they smelled a strong odor of "freshly cultivated" marijuana emanating from the house, noticed the aluminum hose coming out of the window of the addition, heard the sound of fans, and, using night vision goggles, saw light emanating from another window.  Also on May 28, Kent was provided information from a police officer in another town that that officer previously had observed the defendant and another man purchasing "a large amount of indoor [marijuana] grow

---

[4] The property consists of a house with a small addition to the rear (connected by a breezeway), a barn in the front yard, and a large barn in the back yard.

materials" from a "hydroponic shop" in Foxborough and then loading the materials into an automobile registered to the defendant. On May 29, Kent obtained utility bills relating to electrical service for the property and neighboring homes on Main Street in Brewster. These records revealed that for the previous six months, the average kilowatt usage for three neighboring homes was 542.3 kilowatt hours (kWh), 23.3 kWh, and 246.6 kWh, respectively; the average kilowatt usage for the defendant's property for the same time period was 3,116.5 kWh. Based on his training and experience, Kent was aware that because marijuana growing operations require different types of electrical equipment, e.g., "high intensity discharge lamps, fluorescent lights, fans, reflectors, irrigation and ventilation equipment such as aluminum flexible hose" to be operating consistently, high usage of electricity -- a "noticeable increase in kilowatt usage" -- is to be expected.

When the police executed the search warrant that, based on the affidavit, a judge in the District Court had issued, the defendant was present. Seized during the search, among other items, were seventy marijuana plants, eleven fluorescent industrial lights, an aluminum flexible hose, a digital scale, approximately 1.2 pounds of marijuana, and $2,697. The defendant was placed under arrest.

The defendant filed a motion to suppress the seized evidence, and also to suppress statements he made at the time of the search and his arrest.  A different District Court judge allowed the motion in a written memorandum of decision.  The judge concluded that the search warrant affidavit "establishe[d] probable cause that marijuana was being cultivated indoors at the defendant[']s home," but concluded in substance that in light of the act, the affidavit failed to establish probable cause that the cultivation was for more than a sixty-day supply of marijuana or that the defendant was not authorized to grow that amount -- and therefore that the cultivation was illegal. The Commonwealth filed a timely application for leave to file an interlocutory appeal of the judge's suppression order and motion to stay further proceedings in the case.  See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996).  A single justice of this court allowed the application and reported the case to the Appeals Court.  Thereafter, we allowed the Commonwealth's motion for direct appellate review.

Discussion.  1.  Overview of the act.  The voters approved the act as a ballot measure in 2012, and the act went into effect on January 1, 2013.  St. 2012, c. 369.  Section 1 of the act sets out a statement of purpose:

> "The citizens of Massachusetts intend that there should be no punishment under state law for qualifying patients, physicians and health care professionals, personal caregivers for patients, or medical marijuana

treatment center agents for the medical use of marijuana, as defined herein" (emphasis added).

The term "medical use of marijuana" is defined in the act as

follows:

> "'Medical use of marijuana' shall mean the acquisition, <u>cultivation</u>, possession, processing (including development of related products such as food, tinctures, aerosols, oils, or ointments), transfer, transportation, sale, distribution, dispensing, or administration of marijuana, for the benefit of qualifying patients in the treatment of debilitating medical conditions, or the symptoms thereof" (emphasis added).

St. 2012, c. 369, § 2 (I).  The substantive provisions of the

act that follow the definitional section first set out the

parameters of protection from State prosecution and penalties

that the act respectively gives to physicians and health care

professionals, qualifying patients and their personal

caregivers, and licensed dispensary agents.  See <u>id</u>. at §§ 3-5.[5]

---

[5] Pertinent to this case is § 4 of St. 2012, c. 369 (act):

"Protection From State Prosecution and Penalties for Qualifying Patients and Personal Caregivers

"Any person meeting the requirements under this law shall not be penalized under Massachusetts law in any manner, or denied any right or privilege, for such actions.

"A qualifying patient or a personal caregiver shall not be subject to arrest or prosecution, or civil penalty, for the medical use of marijuana provided he or she:

"(a) Possesses no more marijuana than is necessary for the patient's personal medical use, not exceeding the amount necessary for a sixty-day supply; and

See also id. § 6 (A) ("The lawful possession, cultivation, transfer, transport, distribution, or manufacture of medical marijuana as authorized by this law shall not result in the forfeiture or seizure of any property"). These provisions are followed by a section specifying "limitations" of the act, including the following: "Nothing in [the act] supersedes Massachusetts law prohibiting the possession, cultivation, transport, distribution, or sale of marijuana for nonmedical purposes." Id. at § 7 (E). Thereafter, the act establishes a medical marijuana registration or licensing regime that is to be set up and administered by the Department of Public Health (department), and that covers nonprofit medical marijuana treatment centers, medical marijuana center dispensary agents, and qualifying patients and personal caregivers. See id. at §§ 9-12. Under the act, it is clear that the principal source of medical marijuana is intended to be the nonprofit medical marijuana treatment centers, or dispensaries, that are to be registered by the department. See id. at §§ 2 (H), 9 (B), (C). To that end, the act directed that during the first year the act was in effect, the department "shall" have registered up to thirty-five of these centers, with at least one in every county, and further states that "[i]n the event the [d]epartment

---

"(b) Presents his or her registration card to any law enforcement official who questions the patient or caregiver regarding use of marijuana."

determines in a future year that the number of treatment centers is insufficient to meet patient needs, the [d]epartment shall have the power to increase or modify the number of registered treatment centers.  See id. at § 9 (C).

Of particular relevance here are the act's provisions relating to qualifying patients and personal caregivers as well as to hardship cultivation registrations.  A "qualifying patient" is defined as "a person who has been diagnosed by a licensed physician as having a debilitating medical condition." St. 2012, c. 369, § 2 (K).  The act requires a qualifying patient as well as a personal caregiver[6] to obtain from the department a "registration card," which is a personal identification card issued by the department that serves both to "verify that a physician has provided a written certification to the qualifying patient," and to "identify for the [d]epartment and law enforcement those individuals who are exempt from Massachusetts criminal and civil penalties for conduct pursuant to the medical use of marijuana."  Id. at § 2 (L).  See id. at § 12 (describing application requirements for medical marijuana registration card for qualifying patients and personal caregivers).  A qualifying patient or his or her personal caregiver is permitted to possess up to a sixty-day supply of

---

[6] A "personal caregiver" is defined to mean "a person who is at least twenty-one (21) years old who has agreed to assist with a qualifying patient's medical use of marijuana."  St. 2012, c. 369, § 2 (J).

marijuana necessary for the patient's personal medical use.  See id. at § 4 (A).  In addition, a qualifying patient whose access to a licensed medical marijuana treatment center is limited by finances or an inability to travel to a licensed center may obtain a "hardship cultivation registration" that allows the patient or the patient's personal caregiver to cultivate a sufficient number of marijuana plants to produce and maintain a sixty-day supply of marijuana.  Id. at § 11.  The act tasks the department with defining "the quantity of marijuana that could reasonably be presumed to be a sixty-day supply for qualifying patients."  Id. at § 8.[7]

The act provides that the department was to issue regulations to govern implementation of all the registration provisions in the act.  St. 2012, c. 369, § 13.  These regulations were to be published within 120 days of the act's effective date, May 1, 2013.  The act also provides, however, that "[u]ntil the approval of final regulations, written certification by a physician shall have constituted a

_____

[7] Under the medical marijuana regulations of the Department of Public Health (department), discussed in the next paragraph of the text, the presumptive sixty-day supply of medical marijuana is defined as ten ounces.  See 105 Code Mass. Regs. § 725.004 (2013).  The sixty-day supply may be greater than ten ounces for an individual qualifying patient upon the patient's certifying physician providing written certification and documentation that a greater supply is necessary.  See 105 Code Mass. Regs. § 725.010(I) (2013).  The regulation does not identify the number of marijuana plants that may be necessary to grow ten ounces of marijuana.

registration card for a qualifying patient."  Id.  See id. at

§ 2 (N) (definition of "written certification").  Additionally,

until final regulations were in place, "the written

recommendation of a qualifying patient's physician shall have

constituted a limited [i.e., hardship] cultivation

registration."  Id. at § 11.[8]

The department issued its final medical marijuana

regulations on May 8, 2013.  105 Code Mass. Regs. § 725.000

(2013).  But of significance to the present case, § 725.015 of

these regulations, which defines the registration requirements

for a qualifying patient, provides that if a qualifying patient

received an initial written certification signed by a physician

before the department was accepting registration applications,

---

[8] It appears that the act uses the terms "certification" and "recommendation" interchangeably.  Reading together the quoted provisions of St. 2012, c. 369, §§ 13 and 11, relating to what respectively constitutes a qualifying patient's registration card and a hardship cultivation registration pending approval of the department's regulations, we understand them to be referring to the same document, namely, the "written certification" defined in St. 2012, c. 369, § 2 (N), that is signed by a licensed physician and certifies the qualifying patient for use of medical marijuana.  A memorandum appearing on the department's Web site concerning implementation of the act confirms this understanding.  See "Guidance for Law Enforcement Regarding the Medical Use of Marijuana," Department of Public Health, Bureau of Health Care Safety and Quality, Medical Use of Marijuana Program, at 2 (Updated Apr. 15, 2015) ("Until [the department] begins to process hardship cultivation applications, patients or their caregivers may conduct limited cultivation at their primary residence, but may only grow a sufficient amount for their sixty day supply as certified by the patient's physician").

"the initial certification will remain valid until the application for the registration card is approved or denied by the [d]epartment."[9]  The same holds true for limited cultivation registrations:  a qualifying patient who received written certification from a physician is entitled to continue to use that written certification as a hardship cultivation registration "until the application for the hardship cultivation registration card is approved or denied by the [d]epartment." 105 Code Mass. Regs. § 725.035(L) (2013).  The parties do not dispute that at the time of the search of the property, the department was not yet approving or denying any applications for registration, and there were no registered medical marijuana treatment centers in operation.[10]  Thus, a qualified physician's

---

[9] There is a separate provision governing the registration requirements for personal caregivers, 725 Code Mass. Regs. § 725.020 (2013), and it also provides that "the initial certification will remain valid until the application for the registration card is approved or denied by the [d]epartment." Id. at § 725.020(C).

[10] According to its public announcements, the department has determined that the registration process should be electronic. See Program Update -- October 8, 2014, Information for Patients and Caregivers, Massachusetts Department of Public Health, http://www.mass.gov/eohhs/gov/departments/dph/programs/hcq/ medical-marijuana/patients-and-caregivers.html [http://perma.cc/ 7GS7-ADNU].  The department's goal of having the electronic registration system ready by January, 2014, see 105 Code Mass. Regs. §§ 725.015(C), 725.020(C), 725.035(L) (setting initial registration deadline at January 1, 2014), went unrealized.  On October 8, 2014, the department announced that, effective February 1, 2015, "paper certifications" by physicians would no longer be valid proxies for proper registration and, as of that date, every qualifying patient would be required to obtain an

written recommendation, undocumented in any database, sufficed as both a medical marijuana registration card and a limited medical marijuana cultivation registration.

2. Search warrant and application.  "Our inquiry as to the sufficiency of the search warrant application always begins and ends with the four corners of the affidavit. . . .  The magistrate considers a question of law:  whether the facts presented in the affidavit and the reasonable inferences therefrom constitute probable cause. . . .  [W]e determine whether, based on the affidavit in its entirety, the magistrate had a substantial basis to conclude that a crime had been committed, . . . and that the items described in the warrant were related to the criminal activity and probably in the place to be searched" (quotations and citations omitted). Commonwealth v. O'Day, 440 Mass. 296, 297-298 (2003).  See Commonwealth v. Donahue, 430 Mass. 710, 711-712 (2000).

The Commonwealth contends that Kent's affidavit established probable cause for the search because, as the motion judge concluded, the affidavit provided probable cause to believe that the defendant was engaged in cultivating marijuana at the property, and in the Commonwealth's view all-or-any cultivation

_____

electronic certification from his or her physician and to be formally and electronically registered with the department.  See Program Update -- October 8, 2014, Information for Patients and Caregivers, supra.

of marijuana remains illegal even under the act.  To the extent that the act permits a limited class of properly licensed or registered persons to grow marijuana, the argument continues, the existence of a license or registration is an affirmative defense for a defendant charged with unlawful cultivation to raise at trial -- the Commonwealth is not obligated to disprove such a status in order to conduct a search at the outset of an investigation.

We disagree.  Although as a general matter, marijuana cultivation is a crime, see G. L. c. 94C, § 32C (a); Commonwealth v. Palmer, 464 Mass. 773, 777 (2013), and the act specifies generally that it remains so, see St. 2012, c. 369, § 7 (E), the Commonwealth is incorrect that the act has not effected any change in the statutory and regulatory landscape relevant to establishing probable cause for a search targeting such cultivation.  What § 7 (E) states is that nothing in the act "supersedes Massachusetts law prohibiting the . . . cultivation . . . of marijuana for nonmedical purposes" (emphasis added).  Under the act, cultivation of marijuana is expressly permitted if a person or entity is properly registered to do so, and the cultivation does not exceed the amount necessary to yield a sixty-day supply of medical marijuana.  See St. 2012, c. 369, §§ 9 (B), (D), 11.  See also id. at §§ 4-6. As previously stated, when the search at issue here took place,

the act was not fully implemented; no marijuana treatment centers were operating; and therefore, pursuant to the act's express provisions, see id. at §§ 11, 13, every person who was certified as a qualifying patient or the patient's personal caregiver was authorized to cultivate a sufficient quantity of marijuana to produce a sixty-day supply -- presumptively ten ounces.

In these circumstances, as the motion judge suggested, our cases involving searches for firearms that may be legally possessed with a license but are illegal in the absence of one provide an appropriate analytic framework.  See Commonwealth v. Toole, 389 Mass. 159, 163 (1983).[11]  Accord Commonwealth v. Nowells, 390 Mass. 621, 627 (1983) (search warrant affidavit did not establish probable cause for search of defendant's apartment for illegal firearms where informants only indicated they had seen guns there:  "The ownership or possession of a handgun [or

_____

[11] In Toole, we considered a warrantless search of a vehicle in which police suspected a gun was located:  "[I]t has not [been] shown that, when the search was conducted, the police reasonably believed that there was a connection between the vehicle and any criminal activity of the defendant, an essential element to a finding of probable cause. . . .  The empty holster and ammunition found on the defendant certainly created probable cause to believe that there was a gun in the cab.  But carrying a .45 caliber revolver is not necessarily a crime.  A possible crime was carrying a gun without a license to carry firearms, G. L. c. 269, § 10 (a).  However, the police did not learn that the defendant had no firearm identification card until after the search.  They apparently never asked the defendant whether he had a license to carry a firearm" (citation omitted). Commonwealth v. Toole, 389 Mass. 159, 163 (1983).

a rifle] is not a crime and standing alone creates no probable cause").  See also Commonwealth v. Couture, 407 Mass. 178, 181, cert. denied, 498 U.S. 951 (1990); Commonwealth v. Stevens, 361 Mass. 868 (1972).  As these cases indicate, although firearms cannot legally be carried without a license to carry, see G. L. c. 269, § 10 (a), in the absence of any evidence beyond the "unadorned fact," Couture, supra, that the defendant was carrying a gun, there was no probable cause to suspect a crime was being committed.[12]  Cf. Commonwealth v. Marra, 12 Mass. App. Ct. 956, 956-957 (1981) (defendant convicted of storing dynamite

---

[12] Commonwealth v. Gouse, 461 Mass. 787 (2012), a case on which the Commonwealth relies, is inapposite.  In Gouse, the defendant attacked the victim, his former girl friend, on the street and left the scene; the investigating police were told by bystanders as well as the defendant's father that he might be armed; the police also had information that he had been released recently from prison, and had been observed armed with a weapon and dealing "crack" cocaine.  Id. at 788, 790-791.  On the same day as the attack of the victim, the defendant was stopped by the police while driving in a vehicle, removed from the vehicle, and arrested, and the vehicle was impounded.  Id. at 791.  The police thereafter, during a warrantless search of the vehicle, found a gun in a bag that had been placed in the trunk of the vehicle.  Id. at 791-792.  Before trial, the defendant unsuccessfully moved to suppress evidence of the gun, but not on the ground that probable cause did not exist to believe he was not licensed to carry the weapon.  See id. at 792-794.  (Indeed, such an argument would have been highly problematic, given that the defendant at the time, in the court's words, was "a fleeing felon."  See id. at 794.  A felon, by definition, may not be licensed to carry a firearm.  See G. L. c. 140, § 131 [d] [i].)  The defendant in Gouse did raise a challenge related to the license issue, but the challenge concerned the allocation of the burden of proof between the defendant and the Commonwealth at trial concerning the existence of a license.  See Gouse, supra at 799-808.

without license; conviction reversed where search warrant authorizing search of defendant's trailer for dynamite was not based on probable cause: "The observation of a box containing [dynamite] blasting caps, without more, to indicate that their storage was unlicensed, does not provide probable cause for entry into the [defendant's] trailer" where no circumstances set out in affidavit indicated blasting caps were, or were reasonably likely to be, unlicensed).

The Commonwealth again misses the mark in seeking to distinguish these cases and arguing that the existence of a registration card or written certification, like the existence of a license, constitutes an affirmative defense that the defendant himself is obliged to raise in the first instance -- at trial. A license does constitute an affirmative defense at trial to be raised by the defendant. See G. L. c. 278, § 7.[13] See also Commonwealth v. Gouse, 461 Mass. 787, 804-808 (2012); Couture, 407 Mass. at 181-182; Commonwealth v. Jones, 372 Mass. 403, 405-406 (1977). But this case is not about defenses at trial; the issue is probable cause to conduct an investigatory search. At the trial of a case in which the existence or nonexistence of a license defines whether the charged conduct was legal or instead a crime, as Couture explains, the defendant

---

[13] General Laws c. 278, § 7, provides: "A defendant in a criminal prosecution, relying for his justification upon a license . . . shall prove the same; and until so proved, the presumption shall be that he is not so authorized."

"has every opportunity to respond" by producing the license authorizing his conduct, and in the absence of the defendant's doing so, it is not unfair for the jury to presume in accordance with c. 278, § 7, that the defendant did not have a license. Couture, supra at 182.  Accord Gouse, supra at 806.  At the time of a search, however, such a defendant is in a very different position:  the police arrive, armed with (among other things) a warrant authorizing the search; the defendant has no right to object or respond, and indeed may not even be present.  Cf. Couture, supra at 182-183 (contrasting position of defendant at trial with defendant's position when confronted by police stopping defendant's truck, removing him from it at gunpoint, and conducting warrantless search of truck to locate pistol police suspected would be present).  Cf. also Commonwealth v. Landry, 438 Mass. 206, 211 (2002) (charge of unlawful possession of hypodermic needle; contrasting defendant's burden to raise affirmative defense of license at trial with question whether probable cause existed for unlawful possession at time of arrest).[14]

---

[14] The Commonwealth cites five decisions from other States' courts as ostensibly persuasive authority that a medical marijuana license is exclusively an affirmative defense, rather than a legalizing mechanism for program participants.  See Niehaus vs. State, Nos. A-8385, 4798 (Alaska Ct. App. Dec. 10, 2003); People v. Sexton, 296 P.3d 157 (Colo. App. 2012); State vs. Meharg, No. DC-06-16 (Mont. 21st Jud. Dist. Ct. May 26, 2006); State v. Senna, 194 Vt. 283 (2013); State v. Fry, 168 Wash. 2d 1, 13 (2010).  We do not think these cases offer useful

The firearms and other license cases just discussed govern the result here. Beginning with the initial statement of purpose, the act's provisions make it abundantly clear that its intent is to protect the lawful operation of the medical marijuana program established by the legislation from all aspects of criminal prosecution and punishment, including search and seizure of property as part of a criminal investigation. See St. 2012, c. 369, §§ 1, 3-6. The act's medical marijuana program is structured as a licensing or registration system, and expressly contemplates the lawful possession, cultivation, and distribution of marijuana for medical purposes by a number of different individuals (and certain nonprofit entities), as long as they are registered to do so. In light of the statutory and regulatory framework created by the act, a search warrant affidavit setting out facts that simply establish probable cause to believe the owner is growing marijuana on the property in question, without more, is insufficient to establish probable cause to believe that the suspected cultivation is a crime. Missing are facts indicating that the person owning or in

---

guidance here. The courts were considering substantially different medical marijuana laws, and also very different factual contexts.

control of the property is not or probably not registered to cultivate the marijuana at issue.[15]

Detective Kent's affidavit filed in support of the search warrant in this case did not contain any information at all addressing whether the defendant was or was not registered as a qualifying patient or personal caregiver to grow the marijuana the police reasonably suspected was growing on the property.[16] Nor, as the motion judge observed, did it contain other facts or qualified opinions that might supply an alternate basis to establish the necessary probable cause to believe the cultivation was unlawful.  See note 15, supra.  As such, the affidavit failed to establish probable cause for the search.[17]

---

[15] This is not to say that such an affidavit always must contain facts directly establishing that the person whose property the police seek to search for evidence of unlawful marijuana cultivation is or is probably not registered to do so; reasonable inferences may be drawn that a suspected marijuana cultivation operation is unlawful from other facts.  For example, except for registered medical marijuana treatment centers, it remains unlawful to cultivate marijuana for sale. Facts indicating that a confidential informant recently purchased marijuana from the owner of the property where the cultivation operation is suspected to be taking place would likely supply the requisite probable cause to search that property for evidence of unlawful cultivation, as would information that police recently had observed marijuana plants growing on the property and that, in the opinion of a properly qualified affiant, the number of plants exceeded the quantity necessary to grow a sixty-day supply of ten ounces.

[16] From start to finish, the affidavit reads as though the act did not exist.

[17] In arguing against this conclusion, the Commonwealth relies heavily on Commonwealth v. Palmer, 464 Mass. 773, 775-778

We disagree with the Commonwealth that the result we reach imposes an impossible burden on police to search for elusive and difficult-to-locate information about whether a person suspected of growing marijuana is registered to do so. Although not available in 2013 when the search here was conducted, we assume that with the introduction of the electronic registration system, see note 10, supra, there is or soon will be available to law enforcement officers an accessible list of "the persons issued medical marijuana registration cards" as provided in § 15 of the act.[18] Moreover, as we have suggested (see note 15, supra), information independent of registration status may also

---

(2013). The reliance is misplaced. In Palmer, we considered what impact, if any, the decriminalization of possession of one ounce or less of marijuana, a ballot measure approved by the voters in 2008, had on G. L. c. 94C, § 32C (a), which defines the offense of cultivation of marijuana. See Palmer, supra at 775. We concluded that the decriminalization measure did not affect the cultivation statute, and that cultivation of marijuana of one ounce or less remained a crime. Id. at 774, 777, 779. But the events giving rise to the criminal charges at issue in Palmer occurred in 2010, see id. at 774, no issue concerning the medical marijuana act, passed in 2012, was raised in Palmer, and the court did not consider the relationship of the medical marijuana act to § 32C (a) in any respect.

[18] Section 15 of the act states:

"The department shall maintain a confidential list of the persons issued medical marijuana registration cards. Individual names and other identifying information on the list shall be exempt from [G. L. c. 66, § 10, the Public Records Law], and not subject to disclosure, except to employees of the department . . . and to Massachusetts law enforcement officials when verifying a card holder's registration" (emphasis added).

be presented to establish probable cause concerning the suspected unlawful cultivation of marijuana.

Conclusion.  The order allowing the defendant's motion to suppress is affirmed.

So ordered.