NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12107

JAMES H. DUNN & another[1] vs. ATTORNEY GENERAL & others.[2]


Suffolk.     June 8, 2016. - July 6, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Initiative.  Constitutional Law, Initiative petition.  Attorney
General.  Animal.



Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on April 25, 2016.

The case was reported by Duffly, J.


Katherine J. Spohn, of Nebraska (Mary Jacobson, of
Nebraska, with her) for the plaintiffs.
Elizabeth N. Dewar, Assistant Attorney General, for the
defendants.
Thomas O. Bean for the interveners.


_____

[1] Diane Sullivan.

[2] Secretary of the Commonwealth.  Three of the first ten
signers of the initiative petition at issue (Stephanie J.
Harris, Joann M. Lindenmayer, and Sharon B. Young) were allowed
to intervene as defendants.  We acknowledge the brief submitted
by the interveners.

GANTS, C.J.  In this appeal, we consider whether the Attorney General properly certified an initiative petition proposing a new law that would prohibit (1) confinement of egg-laying hens, calves raised for veal, and breeding pigs on a commercial farm "in a cruel manner," i.e., under conditions that prevent them from lying down, standing up, fully extending their limbs, or turning around freely; and (2) the sale by any business within the Commonwealth of "shell" eggs, "whole veal meat," and "whole pork meat" that the business owner or operator "knows or should know" was produced from animals so confined. The plaintiffs contend that this initiative petition was not properly certified because the animal confinement restriction and the prohibition against sale are not related or mutually dependent subjects, and because the petition is not in "proper form" insofar as it contains a statement of purpose that does not constitute a "law" to be voted upon by the people.  See art. 48, The Initiative, II, §§ 2, 3, of the Amendments to the Massachusetts Constitution, as amended by art. 74 of the Amendments.  We conclude that the subjects contained in the petition are sufficiently related to meet the requirements of art. 48, and that the brief statement of purpose in the proposed measure does not render it unfit for submission to the voters. We therefore conclude that the initiative petition was properly certified by the Attorney General.

Background. In August, 2015, the Attorney General received a signed initiative petition entitled "An Act to prevent cruelty to farm animals," which she numbered as Initiative Petition 15-11 (petition 15-11 or petition). The petition contains two principal provisions, which we shall refer to as the "farm provision" and the "sales provision."

The farm provision, contained in section 2 of the petition, would make it "unlawful for a farm owner or operator within the Commonwealth of Massachusetts to knowingly cause any covered animal to be confined in a cruel manner." "Covered animal" is defined in section 5(D) as "any breeding pig, calf raised for veal, or egg-laying hen that is kept on a farm."[3] "Confined in a cruel manner" is defined in section 5(E) as "confined so as to prevent a covered animal from lying down, standing up, fully extending the animal's limbs, or turning around freely."[4]

The sales provision, contained in section 3 of the petition, would make it "unlawful for a business owner or

---

[3] Section 5(H) of Initiative Petition 15-11 (petition) defines a "[f]arm" as "the land, building, support facilities, and other equipment that are wholly or partially used for the commercial production of animals or animal products used for food; and does not include live animal markets or establishments at which inspection is provided under the Federal Meat Inspection Act."

[4] Under section 4 of the petition, transportation, exhibitions and 4-H programs, slaughter, medical research, veterinary examination and treatment, and certain breeding and birthing practices are exempted from the definition of "confined in a cruel manner."

operator to knowingly engage in the sale within the Commonwealth of Massachusetts of any:

"(A) Shell egg that the business owner or operator knows or should know is the product of a covered animal that was confined in a cruel manner.

"(B) Whole veal meat that the business owner or operator knows or should know is the meat of a covered animal that was confined in a cruel manner.

"(C) Whole pork meat that the business owner or operator knows or should know is the meat of a covered animal that was confined in a cruel manner, or is the meat of the immediate offspring of a covered animal that was confined in a cruel manner."[5]

"Sale," as defined in the proposed measure, refers only to commercial sales by a business.[6] The sales provision is not limited to the sale of eggs, veal, and pork from Massachusetts farms; the sale of such products would be barred regardless of the location of the farms that produced the eggs, veal, and pork. Under section 7, the proposed law would provide a defense for business owners and operators who rely "in good faith upon a

---

[5] "Whole veal meat" and "[w]hole pork meat" are defined in sections 5(T) and 5(S), respectively, as "any uncooked cut . . . that is comprised entirely" of those meats, respectively; they do not include "combination food products," such as "soups, sandwiches, pizzas, hot dogs, or similar processed or prepared food products."

[6] Under section 5(M) of the petition, "[s]ale" means a commercial sale by a business that sells any item covered by section 3, but does not include any sale undertaken at an establishment at which inspection is provided under the Federal Meat Inspection Act. For purposes of this section, a sale is deemed to occur at the location where the buyer takes physical possession of an item covered by section 3.

written certification or guarantee by the supplier" that the eggs, veal, or pork at issue did not come from animals confined in a cruel manner.

Section 6 of the proposed law confers sole enforcement authority on the Attorney General, who is authorized to seek civil fines of up to $1,000 per violation, as well as injunctive relief.  Under section 10, the Attorney General would also be responsible for promulgating, by January 1, 2020, rules and regulations to implement the new law.  The law's operative provisions would take effect, pursuant to section 11, on January 1, 2022.

On September 2, 2015, the Attorney General certified to the Secretary of the Commonwealth (Secretary) that the measure proposed in petition 15-11

> "is in proper form for submission to the people; that the measure is not, either affirmatively or negatively, substantially the same as any measure which has been qualified for submission or submitted to the people at either of the two preceding biennial state elections; and that it contains only subjects that are related or are mutually dependent and which are not excluded from the initiative process pursuant to Article 48, the Initiative, Part 2, Section 2."

On April 25, 2016, the plaintiffs commenced an action against the Attorney General and the Secretary in the county court, seeking relief in the nature of certiorari and mandamus under G. L. c. 249, §§ 4 and 5, and requesting declaratory relief under G. L. c. 231A.  The plaintiffs sought declarations

that petition 15-11 fails to meet the requirements of art. 48 and that the Attorney General erred in certifying it, and further requested a direction that the Secretary take no further steps to advance the petition or submit it to the voters. A single justice of the county court reserved and reported the case to this court.

Discussion. When a new law is proposed by initiative petition, it cannot be presented to the Legislature and the voters for their consideration unless and until the Attorney General reviews it and certifies that it meets the requirements of art. 48 of the Amendments to the Massachusetts Constitution. See art. 48, The Initiative, II, § 3, as amended by art. 74. The plaintiffs contend that the Attorney General's certification of petition 15-11 was improper because the petition does not meet two of art. 48's requirements: (1) that a proposed measure "contain[] only subjects . . . which are related or which are mutually dependent" (related subjects requirement); and (2) that the proposed measure be "in proper form for submission to the people" (proper form requirement). Id. We review the Attorney General's certification decision de novo, bearing in mind "the firmly established principle that art. 48 is to be construed to support the people's prerogative to initiate and adopt laws."

Abdow v. Attorney Gen., 468 Mass. 478, 487 (2014), quoting Carney v. Attorney Gen., 451 Mass. 803, 814 (2008) (Carney II).[7]

1. Related subjects requirement. The related subjects requirement in art. 48 was adopted during the constitutional convention of 1917-1918 in response to delegates' concerns about voter confusion and the dangers of "log-rolling" in the initiative process, i.e., the "practice of including several propositions in one measure or proposed constitutional amendment so that the . . . voters will pass all of them, even though these propositions might not have passed if they had been submitted separately." Carney v. Attorney Gen., 447 Mass. 218, 219 n.4 (2006) (Carney I), quoting Black's Law Dictionary 960 (8th ed. 2004). See Carney I, supra at 227-228; 2 Debates in the Massachusetts Constitutional Convention 1917-1918 at 12, 537, 567, 701-702 (1918) (Constitutional Debates).[8] To prevent initiative petitions from being exploited in this manner, the

---

[7] The scope of this review is limited solely to whether the petition meets art. 48's requirements, and does not extend to other potential challenges to the proposed law's validity or to its interpretation. See Hensley v. Attorney Gen., 474 Mass. , n.13 (2016); Abdow v. Attorney Gen., 468 Mass. 478, 507-508 (2014).

[8] We consider the proceedings of the constitutional convention "not for the purpose of controlling the plain meaning of words written into the Rearrangement of the Constitution but of understanding the conditions under which it came into existence and how it appears then to have been received and understood by the convention." Cohen v. Attorney Gen., 357 Mass. 564, 572 (1970).

delegates considered potential limitations on their subject matter. See Carney I, supra; Constitutional Debates, supra at 537, 856-857. One delegate offered an amendment to require that "[n]o proposed law shall contain more than one subject," which another delegate proposed modifying to state that a proposed law "shall not contain unrelated subjects." See Carney I, supra; Constitutional Debates, supra at 856-857. This modified amendment was adopted by the convention, and, after some reworking by the committee on form and phraseology, ultimately was approved as the provision in art. 48, The Initiative, II, § 3, requiring the Attorney General to certify that a proposed measure "contains only subjects . . . which are related or which are mutually dependent." See Carney I, supra; Constitutional Debates, supra at 953, 1051.

In light of this history, there is no single "bright-line" test for determining whether an initiative meets the related subjects requirement. See Abdow, 468 Mass. at 500, quoting Carney I, 447 Mass. at 226. We do not construe the requirement "so narrowly as to frustrate the ability of voters to use the popular initiative as 'the people's process' to bring important matters of concern directly to the electorate" by effectively confining each petition to a single subject; we recognize that the delegates to the constitutional convention that approved art. 48 permitted more than one subject to be included in a

petition.  Abdow, supra at 499.  Nor do we construe the requirement "so broadly that it allows the inclusion in a single petition of two or more subjects that have only a marginal relationship to one another, which might confuse or mislead voters, or . . .  place them in the untenable position of casting a single vote on two or more dissimilar subjects."  Id.

Balancing these concerns, the related subjects requirement is met where "one can identify a common purpose to which each subject of an initiative petition can reasonably be said to be germane."  Abdow, 468 Mass. at 499, quoting Massachusetts Teachers Ass'n v. Secretary of the Commonwealth, 384 Mass. 209, 219-220 (1981).  "We have not construed this requirement narrowly nor demanded that popular initiatives be drafted with strict internal consistency."  Abdow, supra at 500, quoting Mazzone v. Attorney Gen., 432 Mass. 515, 528-529 (2000).  But we have also cautioned that "[a]t some high level of abstraction, any two laws may be said to share a 'common purpose.'"  Abdow, supra, quoting Carney I, 447 Mass. at 226.  Consequently, we have posed two questions to be considered in addressing the related subjects requirement:  First, "[d]o the similarities of an initiative's provisions dominate what each segment provides separately so that the petition is sufficiently coherent to be voted on 'yes' or 'no' by the voters?"  Abdow, supra, quoting Carney I, supra.  Second, does the initiative petition "express

an operational relatedness among its substantive parts that would permit a reasonable voter to affirm or reject the entire petition as a unified statement of public policy"?  Abdow, supra at 501, quoting Carney I, supra at 230-231.  See Gray v. Attorney Gen., 474 Mass.    ,    (2016) (discussing related subjects requirement).

In this case, the plaintiffs argue that petition 15-11 does not meet the related subjects requirement because the farm provision prohibiting confinement of covered animals in a cruel manner and the sales provision prohibiting sales of products from animals so confined address different public policies. They contend that the farm provision aims to prevent animal cruelty, whereas the sales provision seeks to mitigate the health and safety risks of animal confinement to Massachusetts consumers and to regulate the sale of products derived from these animals.  They assert that the petition unfairly asks voters to decide simultaneously whether to ban certain animal farming methods and whether to require retailers to alter their purchasing decisions.  The plaintiffs also argue that the petition contains unrelated subjects because it concerns three different species of animals:  egg-laying hens, calves raised for veal, and breeding pigs.  The plaintiffs contend that voters may believe that certain confinement practices are beneficial for one species but detrimental for another, so that voters

would not be able to affirm or reject the entire petition as a unified statement of public policy.

We are not persuaded by these arguments. Both the farm provision and the sales provision share a common purpose of preventing farm animals from being caged in overly cramped conditions, consistent with the statement of purpose in section 1 of the proposed law, "to prevent animal cruelty by phasing out extreme methods of farm animal confinement." The two provisions also complement each other in the means of accomplishing this common purpose. The farm provision bars farm owners and operators in Massachusetts from confining hens, calves, and pigs in a cruel manner, and the sales provision prevents businesses in Massachusetts from selling eggs, veal, and pork from animals that were confined in a cruel manner. The latter provision protects Massachusetts farmers who comply with the law by preventing Massachusetts businesses from selling eggs, veal, and pork obtained from out-of-State farmers who confine their animals in a cruel manner and who, by doing so, may be able to underprice their Massachusetts competitors. It also protects hens, calves, and pigs in other States (and other nations) by providing non-Massachusetts farmers with an economic incentive not to confine their animals in a cruel manner if they wish to sell their eggs, veal, and pork in the Massachusetts market. See Massachusetts Teachers Ass'n, 384 Mass. at 220-221

(all provisions of Proposition 2½ were germane to common purpose where they all related "directly or indirectly to the limitation of State and local taxation"). If the confinement of hens, calves, and pigs were to pose a health and safety risk to consumers, the sales provision would also serve the purpose of protecting Massachusetts consumers from that risk, but we do not see that as unrelated to the purpose of preventing the cruel confinement of farm animals; it would simply be an ancillary benefit from the prevention of that cruel confinement. Because the petition's provisions share a common purpose and are related in the accomplishment of that purpose, we conclude that a reasonable voter may affirm or reject the entire petition as a unified statement of public policy.

Finally, although the proposed law covers three different species of farm animals, the petition treats all three species similarly, applying the same prohibition against confinement in a cruel manner to each of them. It is conceivable, as the plaintiffs argue, that a voter might view the law's prohibition against confinement in a cruel manner as appropriate for one species but not for another. But that objection pertains to the scope of the law, i.e., whether it was appropriate to include all three species. "Provided the subjects are sufficiently related," as we believe they are, "the choice as to the scope of

an initiative petition is a matter for the petitioners, not the courts."  Abdow, 468 Mass. at 503.

Accordingly, we conclude that the Attorney General properly certified that petition 15-11 contains only subjects that are related or are mutually dependent. It is therefore fair to ask the people of the Commonwealth to vote "yes" or "no" on a single petition containing both the farm and the sales provisions.

2.  Proper form requirement.  Under art. 48, only laws and constitutional amendments can be presented through the initiative process.  See art. 48, The Initiative, I (defining "the popular initiative" as "the power of a specified number of voters to submit constitutional amendments and laws to the people for approval or rejection"); art. 48, The Initiative, II, § 1 ("An initiative petition shall set forth the full text of the constitutional amendment or law . . . , which is proposed by the petition"); Paisner v. Attorney Gen., 390 Mass. 593, 598 (1983) ("the popular initiative is confined to laws and constitutional amendments").  Accordingly, an initiative petition that proposes neither a law nor a constitutional amendment is not "in proper form for submission to the people." Art. 48, The Initiative, II, § 3, as amended by art. 74.  See Paisner, supra ("the Attorney General has . . . the duty, pursuant to his review of the 'form' of the initiative petition,

to apply his legal judgment to the issue whether a law is proposed").

"Although we have avoided a precise construction of the term 'law' for purposes of art. 48, we have described it as including a measure with binding effect . . . ."  Mazzone, 432 Mass. at 530.  An initiative petition that "merely invites a declaration of opinion by voters" does not present a "law" in proper form for submission to the voters.  Opinion of the Justices, 262 Mass. 603, 605 (1928).  For example, the Justices of this court have opined that an initiative petition did not present a "law" where it asked Massachusetts voters simply to decide whether their senators and representatives in the United States Congress should be requested to repeal Prohibition.  See id. at 604, 606.  We have also held that an initiative was not a "law" that could be submitted to the people for approval or rejection where it asked voters whether to call a constitutional convention.  See Cohen v. Attorney Gen., 357 Mass. 564, 578 (1970).  And we have concluded that an initiative did not propose a "law" where it sought to prescribe rules for the Legislature's internal operations that could not bind the Legislature absent a constitutional amendment, and therefore, if enacted, "would be no more than a nonbinding expression of opinion."  Paisner, 390 Mass. at 601.

In the present case, the plaintiffs contend that petition 15-11 does not properly present a law due to its statement of purpose in section 1, which provides:

> "The purpose of this Act is to prevent animal cruelty by phasing out extreme methods of farm animal confinement, which also threaten the health and safety of Massachusetts consumers, increase the risk of foodborne illness, and have negative fiscal impacts on the Commonwealth of Massachusetts."

The plaintiffs assert that inclusion of this "argumentative" policy statement is improper, taints the entire petition, and results in the petition not being in proper form for submission to the people. The plaintiffs further argue that such policy statements are not contemplated under art. 48 and should not be permitted in initiative petitions.

We disagree. As a general matter, there is nothing inherently improper about including a statement of purpose in an initiative petition. Laws enacted by the Legislature frequently include statements of purpose, which we have in turn used to understand the intent of the enacting Legislature when called upon to interpret those laws. See, e.g., Galenski v. Erving, 471 Mass. 305, 311 (2015) (citing statement of purpose in G. L. c. 32B, § 1); R.D. v. A.H., 454 Mass. 706, 714 (2009) (citing statement of purpose in G. L. c. 209C, § 1); Beale v. Planning Bd. of Rockland, 423 Mass. 690, 695-696 (1996) (citing statement of purpose in G. L. c. 41, § 81M). The people's power to enact

laws through popular initiatives is "coextensive with the Legislature's law-making power under Part II, c. 1, § 1," of the Massachusetts Constitution.  Paisner, 390 Mass. at 601.  See Opinion of Justices, 375 Mass. 795, 817 (1978) ("except as to matters expressly excluded, the scope of the power of the people to enact laws directly is as extensive as that of the General Court").  Statements of purpose are therefore appropriately included in laws proposed by initiative petitions, just as they are in legislative enactments.

Indeed, where we have been called upon to interpret the meaning of laws adopted by initiative petition, we have been guided by statements of purpose.  Just last year, in Commonwealth v. Canning, 471 Mass. 341 (2015), we cited the statement of purpose in the new medical marijuana law, which had been adopted by initiative petition, in analyzing whether the law affected the requirements for a search warrant where the crime alleged was the defendant's cultivation of marijuana plants.  See id. at 344, 352.  See also Bates v. Director of the Office of Campaign & Political Fin., 436 Mass. 144, 165-166 (2002).

The plaintiffs cite the Attorney General's Web site warning to initiative proponents that it may be safer not to include statements of purpose and declarations of public policy, because they may result in a conclusion that the proposed law is not in

proper form for submission to the people.  In response, the Attorney General states that this warning was prompted by concerns that a petition consisting solely of such statements would not propose a proper law, or that a petition containing wide-ranging policy statements might violate the related subjects requirement.  The Attorney General further states that the statement of purpose in section 1 of petition 15-11 does not raise these kinds of concerns.  We agree.

The plaintiffs also contend that, even if a statement of purpose does not always render the form of a petition improper, it does here because it is "argumentative."  The plaintiffs have not called to our attention any case where we have found error in the Attorney General's certification because of the "argumentative" nature of the statement of purpose.  Nor need we determine whether a statement of purpose may be so argumentative that it could make the form of a petition improper, because we do not find the statement of purpose in this petition to be unduly argumentative.

Accordingly, we conclude that an initiative petition presenting a proposed law with binding effect may properly include a statement of purpose.  We therefore conclude that the Attorney General correctly certified that petition 15-11 is in proper form for submission to the people.

We now address two matters that do not affect our holding in this case:  first, the timing of the filing of this action; and second, the one-sentence statements describing the effect of a "yes" and "no" vote on petition 15-11.

3.  <u>Timing of actions challenging the Attorney General's certification decisions</u>.  Article 48 requires that proposed initiative petitions be submitted to the Attorney General by the first Wednesday in August before the assembly of the Legislature in which it is to be introduced.  See art. 48, The Initiative, II, § 3, as amended by art. 74.  According to public information provided by the Attorney General, this is typically done in an odd-numbered year, i.e., in the year before an election year.  See Initiative Petition Process, 2015-2016:  An Overview for Interested Members of the Public, http://www.mass.gov/ago/government-resources/initiatives-and-other-ballot-questions/initiative-petition-process.html [https://perma.cc/PR4Y-BZC9].  The Attorney General usually determines whether a measure proposed by initiative meets the requirements of art. 48 by the first Wednesday in September, i.e., about one month later.  <u>Id</u>.  Decisions not to certify are usually challenged within days.  <u>Id</u>.  Decisions to certify are usually challenged after it is known whether the proponents have gathered enough additional signatures by the first Wednesday in

December to move forward with the process.  Id.  See art. 48, The Initiative, II, § 3, as amended by art. 74.

The plaintiffs commenced this action on April 25, 2016.  In her order reserving and reporting the case for consideration by the full court, the single justice asked the plaintiffs to "explain why this action was filed so late," and invited the defendants to comment as well on the timing of this action and "what they consider to be reasonable and appropriate time guidelines for the filing of cases like this in the future."[9]

We share the single justice's concern with the timing of the complaint.  The Secretary is responsible for distributing an Information for Voters guide (guide) describing initiative petitions in advance of an election.  See art. 48, General Provisions, IV, as amended by art. 108 of the Amendments to the Massachusetts Constitution; G. L. c. 54, § 53.  This guide includes the text of the proposed measures, the Attorney General's summaries, the ballot question titles prepared by the Attorney General and the Secretary, the one-sentence statements describing the effect of a "yes" or "no" vote, statements prepared by the Secretary of Administration and Finance concerning the fiscal consequences of each measure for State and municipal government finances, and arguments for and against

---

[9] In response, the plaintiffs simply stated that they filed the action "as expeditiously as possible."

each measure.  See art. 48, General Provisions, IV, as amended by art. 108; G. L. c. 54, §§ 53, 54.  The Attorney General and the Secretary report that the printing deadline for the guide usually falls in early July.  When an initiative petition is challenged, this court endeavors to decide the case before the July printing deadline to avoid the need for the printing of the guide to be postponed or redone.  But, if adequate time is to be allowed for the parties to brief the issues and agree on a statement of facts, if required, and for the county court or this court to review the case, hear argument, and issue a decision before the printing deadline, there should be a deadline for the filing of a complaint challenging an Attorney General's certification decision.

There is presently no such deadline in our Constitution or laws, and we have previously held that an action alleging that an initiative petition failed to meet art. 48's requirements was not barred by laches, even though it "could have been brought at earlier stages in the initiative process and before thousands of signatures had been obtained and the measure had been submitted to the people."  Sears v. Treasurer & Receiver Gen., 327 Mass. 310, 326 (1951).  We reasoned that "[f]ailure to comply" with art. 48 "will mean that no valid law has been enacted, no matter how great the popular majority may have been in its favor," and that "[a]n unconstitutional law cannot be made valid by the

laches of anyone or by any lapse of time." Id. at 321, 326-327. See Massachusetts Teachers Ass'n, 384 Mass. at 213, 231 n.19), citing Sears, 327 Mass. at 326-327 (laches did not bar actions claiming that initiative failed to meet art. 48's requirements, even though actions were commenced after initiative was adopted by voters; "The doctrine of laches has no significant role in prompt, postelection challenges to the process by which an initiative measure was adopted").

The Attorney General and the Secretary propose that actions challenging the Attorney General's certification decisions should be commenced in the county court by February 1 of an election year. We agree this is a reasonable deadline, and therefore strongly urge plaintiffs to file such challenges by this date. As in a marriage ceremony, it is not unfair to ask those who object to the Attorney General's certification of an initiative petition to "speak now or forever hold your peace." Filing a complaint by February 1 should ordinarily permit the parties to brief the issues for a May hearing, and enable this court to issue a decision by the end of June.[10] Plaintiffs who delay filing beyond this date should bear in mind that such delay may make it impossible for this court to render a decision before the guide is distributed, and may risk causing voter

---

[10] We had to convene a special June sitting of the full court to hear oral argument in this and two other challenges to initiative petitions.

confusion and additional costs for the Commonwealth if the court were to conclude that the Attorney General erred in certifying an initiative petition.

4. The one-sentence "yes" and "no" statements. The election ballot will contain only the summary of petition 15-11 written by the Attorney General and the one-sentence statements jointly written by the Attorney General and the Secretary describing the effect of a "yes" or "no" vote. See art. 48, General Provisions, III, as amended by art. 74; G. L. c. 54, §§ 42A, 53. The summary describes both the farm and the sales provisions. The one-sentence statements, however, refer only to the farm provision; they are silent as to the sales provision.[11]

General Laws c. 54, § 53, provides in relevant part:

"The secretary shall make available for public examination a copy of the ballot question titles, [one]-sentence statements describing the effect of a yes or no vote and fiscal effect statements and shall publish them in the Massachusetts register by the second Wednesday in May. Any [fifty] voters may petition the supreme judicial court for Suffolk county to require that a title or statement be amended; provided, however, that the petition shall be filed within [twenty] days after the publication of the title and statement. The court may issue an order requiring amendment by the attorney general and the state

---

[11] The one-sentence statements inform voters as follows:

"A YES VOTE would prohibit any confinement of pigs, calves, and hens that prevents them from lying down, standing up, fully extending their limbs, or turning around freely.

"A NO VOTE would make no change in current laws relative to the keeping of farm animals."

secretary only if it is clear that the title, [one]-sentence statement or fiscal effect statement in question is false, misleading or inconsistent with the requirements of this section."

Neither the plaintiffs nor any other voters filed a petition seeking to amend the one-sentence statements prepared by the Attorney General and the Secretary for petition 15-11.

We, however, recognized that the one-sentence statements might be clearly misleading to voters because they make no reference to the sales provision, even though the initiative petition includes only two primary provisions and, in contrast with the farm provision, the sales provision will potentially affect every Massachusetts consumer of eggs, veal, and pork.[12] We therefore invited the parties and interveners at oral argument to provide supplemental briefs as to whether we have the legal authority to order the Attorney General and Secretary

---

[12] We also recognize that the one-sentence statements cannot, and should not, attempt to describe all the elements of a proposed measure. That would undermine their usefulness as a shorthand reference for voters. We also recognize that deference is due the Attorney General's and the Secretary of the Commonwealth's reasonable judgments in deciding what to include in the one-sentence statements, as evidenced by the statute permitting the court to order amendment "only if it is clear" that the statement "in question is false, misleading or inconsistent with" the statute's requirements (emphasis added). G. L. c. 54, § 53. And we acknowledge that the one-sentence statements are supplemented by other information provided to voters, most importantly the Attorney General's summary, which clearly describes the sales provision.

to amend the one-sentence statements where no complaint was filed under § 53.[13]

We conclude that, even if we were to find that the one-sentence statements are clearly misleading, we have no power to order their amendment where no petition has been filed under § 53.  Where a statute requires that a certain claim can only be brought by a stated number of specified plaintiffs in a particular court, we have treated these requirements as jurisdictional, and we have been reluctant to infer jurisdiction on some other basis.  See Litton Business Sys., Inc. v. Commissioner of Revenue, 383 Mass. 619, 621-622 (1981) (statute that permits "ten taxable inhabitants" to petition court to enjoin municipality from unlawfully raising or expending money imposes jurisdictional requirements; action did not come within general jurisdiction of court of equity, and could be maintained only in accordance with statute); Carlton v. Salem, 103 Mass. 141, 143 (1869) (where statutes expressly confer jurisdiction in particular circumstances, they "create a strong implication against the existence of . . . general equity jurisdiction").[14]

---

[13] We also invited the supplemental briefs to address whether the one-sentence statements were clearly misleading and, if they were and if we had the authority to order amendment, what language the parties and interveners would recommend we adopt.

[14] In particular, the requests in the plaintiffs' complaint for relief in the nature of certiorari and mandamus, and for

Because we conclude that we lack jurisdiction to order amendment of the one-sentence statements, we do not reach the question whether they are clearly misleading.

Conclusion. Having determined that the Attorney General properly certified petition 15-11 pursuant to art. 48, The Initiative, II, § 3, as amended by art. 74, we remand the case to the county court for entry of a declaratory judgment to that effect.

So ordered.

---

declaratory relief, do not provide an alternative basis for us to exercise jurisdiction to order amendment of the one-sentence statements. It is well settled that certiorari and mandamus cannot be employed as alternative routes to relief where another avenue already exists. See, e.g., Picciotto v. Superior Court Dep't of the Trial Court, 436 Mass. 1001, 1001 (2002), cert. denied, 537 U.S. 820 (2002), quoting G. L. c. 249, § 4 ("Certiorari simply does not provide an additional or alternative avenue of appellate review. . . . [T]he purpose of a civil action in the nature of certiorari is to correct errors that 'are not otherwise reviewable by motion or by appeal'"); Callahan v. Superior Court, 410 Mass. 1001, 1001 (1991) ("It is well settled that relief in the nature of mandamus is extraordinary and may be granted only to prevent a failure of justice in instances where there is no alternative remedy"). Nor can a declaratory judgment action create jurisdiction where none exists. "General Laws c. 231A, § 1, does not expand the jurisdiction of the courts upon which it confers power to render declaratory decrees; the statute makes it clear that this power is conferred on the courts 'within their respective jurisdictions'" (footnote omitted). Sisters of Holy Cross of Mass. v. Brookline, 347 Mass. 486, 491 (1964).