NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12106
SJC-12117

 JOSEPHINE HENSLEY & others[1]  vs.  ATTORNEY GENERAL & another.[2]

 MATTHEW JOHN ALLEN & others[3]  vs.  ATTORNEY GENERAL & another.[4]


        Suffolk.     June 8, 2016. - July 6, 2016.

   Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk,
                     & Hines, JJ.


Initiative.  Constitutional Law, Initiative petition.  Attorney
     General.  Marijuana.



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on April 22, 2016.

     The case was reported by Duffly, J.

     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on May 10, 2016.

     The case was reported by Spina, J.

_____

     [1] Fifty-eight registered Massachusetts voters.

     [2] Secretary of the Commonwealth.

     [3] Sixty-two registered Massachusetts voters.

     [4] Secretary of the Commonwealth.

John S. Scheft for Josephine Hensley & others.
Robert E. Toone, Assistant Attorney General, for the defendants.
Thomas R. Kiley for Matthew John Allen & others.
David G. Evans, of New Jersey, for Massachusetts Hospital Association & others, amici curiae, submitted a brief.

GANTS, C.J. We have before us two cases involving an initiative petition that, if approved by the voters in the November, 2016, election, would legalize, regulate, and tax marijuana and products that contain marijuana concentrate. The plaintiffs in the first case (Hensley case) claim that the Attorney General erred in certifying the petition for inclusion on the ballot under art. 48 of the Amendments to the Massachusetts Constitution because it contains subjects that are not related or mutually dependent. They also claim that the Attorney General's summary of the measure is not fair. Finally, they contend that, if the question is to be included on the ballot, we should require the Attorney General and the Secretary of the Commonwealth (Secretary) to amend the title and the one-sentence statements they prepared because they are clearly misleading, in violation of G. L. c. 54, § 53. The plaintiffs in the second case (Allen case) include eleven of the original fifteen signers of the initiative petition. They challenge only the title and the one-sentence "yes" statement prepared by the Attorney General and the Secretary, but on grounds different from those alleged by the Hensley plaintiffs.

We conclude that the Attorney General did not err in certifying the petition for inclusion on the ballot under art. 48 because the petition contains only related subjects.  We also conclude that her summary of it is fair.  Finally, we conclude that it is clear that the title assigned to the petition and the one-sentence statement describing the effect of a "yes" vote are misleading, in violation of § 53, and we therefore order the Attorney General and the Secretary to amend the title and statement.[5]

Description of the petition.  The petition proposes comprehensive statutory changes in the law governing marijuana in what its proponents have entitled, "The Regulation and Taxation of Marijuana Act" (proposed act).  The stated purpose of the proposed act is "to control the production and distribution of marijuana under a system that licenses, regulates and taxes the businesses involved in a manner similar to alcohol and to make marijuana legal for adults [twenty-one] years of age or older."  Its stated intent is "to remove the production and distribution of marijuana from the illicit market and to prevent the sale of marijuana to persons under [twenty-

---

[5] We acknowledge the two amicus briefs submitted in the first case (Hensley case), one from the Massachusetts Hospital Association and seventy-two other individuals and organizations, and the other from the plaintiffs in the second case (Allen case).

one] years of age by providing for a regulated and taxed distribution system."

The centerpiece of the proposed act is the addition of a new chapter of the General Laws (chapter 94G), comprising fourteen detailed sections, that would legalize under Massachusetts law the possession, use, and transfer of marijuana and products containing marijuana concentrate (including edible products) and the cultivation of marijuana, all in limited amounts, by individuals twenty-one years of age or older.[6] Among other things, the new chapter 94G would permit an individual lawfully to purchase and possess one ounce or less of marijuana, not more than five grams of which may be in the form of marijuana concentrate.[7] It would also permit the possession in one's home of up to ten ounces of marijuana, the cultivation of a limited number of marijuana plants in one's home for personal use, and the private transfer without remuneration of up to one

---

[6] "Marijuana products" are defined in the proposed act as "products that have been manufactured and contain marijuana or an extract from marijuana, including concentrated forms of marijuana and products composed of marijuana and other ingredients that are intended for use or consumption, including edible products, beverages, topical products, ointments, oils and tinctures."

[7] "Marijuana concentrate" is defined in the proposed act as "the resin extracted from any part of the plant of the genus Cannabis and every compound, manufacture, salt, derivative, mixture or preparation of that resin but shall not include the weight of any other ingredient combined with marijuana to prepare marijuana products."

ounce of marijuana, not more than five grams of which could be marijuana concentrate, to another individual age twenty-one or older.  It would not permit the public consumption of marijuana.[8]

The proposed act also contains detailed provisions for the licensing, operation, and regulation of the various types of "marijuana establishments" that would be engaged in marijuana-related business in Massachusetts, including marijuana cultivators, product manufacturers, retailers, and testing facilities.  It would amend G. L. c. 10 by adding two new sections, §§ 76 and 77, that would create new authorities within the Department of the State Treasurer:  a "cannabis control commission" and a "cannabis advisory board."  The cannabis control commission would consist of three members appointed by the Treasurer, and would "have general supervision and sole regulatory authority over the conduct of the business of marijuana establishments" in the Commonwealth.  The cannabis

---

[8] The proposed act would impose civil penalties for certain violations of the new law.  For example, the possession of more than one ounce but not more than two ounces of marijuana outside of one's residence, or the cultivation of more than six but not more than twelve plants, would be "subject only to a civil penalty of not more than [one hundred dollars] and forfeiture of the [excess] marijuana . . . , but shall not be subject to any other form of criminal or civil punishment or disqualification solely for this conduct."  Civil penalties would also be imposed for, among other things, the public consumption of marijuana, the possession of an open container of marijuana or marijuana products in a motor vehicle, and the purchase or attempted purchase of marijuana or marijuana products by individuals under the age of twenty-one.

advisory board would consist of fifteen members appointed by the Governor, and "study and make recommendations" to the commission "on the regulation of marijuana and marijuana products."

The proposed act would also add a new chapter to the General Laws (chapter 64N) that would provide for the taxation of the retail sale to consumers of marijuana and marijuana products. Specifically, chapter 64N would impose on each such sale, in addition to whatever sales tax may be due under existing State law, an excise equal to 3.75 per cent of the total sales price. The new law would also authorize cities and towns to impose an additional local sales tax of up to two per cent.[9]

Chapter 94G of the proposed act states that "[t]his chapter shall not be construed to affect the provisions of chapter 369 of the acts of 2012, relating to the medical use of marijuana as enacted by the people in the state election of 2012." See St. 2012, c. 369 (medical marijuana law). However, several provisions concern medical marijuana and medical marijuana treatment centers. First, the sale of medical marijuana and medical marijuana products would be exempt from the new 3.75 per

---

[9] Monies collected from the State excise would be placed into a newly created Marijuana Regulation Fund, to be used, subject to appropriation by the Legislature, to offset the costs of implementing, administering, and enforcing the new law; any excess would be transferred annually to the State's General Fund. Monies collected from a local sales tax would be distributed to the taxing city or town.

cent excise tax. Second, the proposed act would permit a registered medical marijuana treatment center also to obtain a license to operate as a marijuana retailer and, if separately licensed, to operate both a medical and retail operation at a shared location. Cities and towns would not be allowed to prohibit a retailer under the new law from operating in any zoned area in which a medical marijuana treatment center is already registered. Third, although the proposed act requires the commission to promulgate its initial regulations no later than September 15, 2017, and to begin accepting license applications shortly thereafter, it also provides, in the event regulations are not promulgated by January 1, 2018, that existing medical marijuana treatment centers may begin to cultivate, manufacture, and sell marijuana and marijuana products until the commission promulgates the necessary regulations and issues licenses for establishments under the new law. Finally, medical marijuana treatment centers would be allowed to apply for licenses under the new law earlier than other applicants and, in certain circumstances, would be given preference in receiving licenses under the new law.

Procedural history. The initiative petition was filed with the Attorney General in August, 2015, for her consideration pursuant to art. 48, The Initiative, II, § 3, of the Amendments to the Massachusetts Constitution, as amended by art. 74 of the

Amendments.  The Attorney General determined that the proposed act "contains only subjects not excluded from the popular initiative and which are related or which are mutually dependent," and therefore that it was "in proper form for submission to the people."  Id.  She also prepared a summary of the proposed act to be printed at the top of the petition forms that the proponents would use to gather the requisite signatures.[10]  The proponents thereafter filed the petition with the Secretary, collected more than the necessary number of additional signatures, and in December, 2015, timely filed the signed petition forms with the Secretary, all as required by art. 48.  The Secretary transmitted the petition to the House of Representatives in accordance with art. 48, The Initiative, II, § 4.[11]  The parties agree that if the proponents gather and submit sufficient additional signatures by July 6, 2016, as required by art. 48, The Initiative, V, § 1, the Secretary intends to take the necessary steps to place the proposed law on the November ballot.

In addition to the Attorney General's summary, the Attorney General and the Secretary, in accordance with G. L. c. 54, § 53, jointly prepared a title for the question and two one-sentence

---

[10] The text of the Attorney General's summary is reprinted in the Appendix to this opinion.

[11] The Legislature has not enacted the measure.

statements describing, respectively, the effect of a "yes" vote and the effect of a "no" vote on the ballot question.

The plaintiffs in the Hensley case, who are fifty-nine registered Massachusetts voters, commenced their action in the county court on April 22, 2016, alleging, among other things, that the proposed act contains two unrelated subjects -- the legalization of marijuana for adult use and a change in the restrictions on medical marijuana treatment centers. They also allege that the Attorney General's summary is not fair as required by art. 48 because it does not adequately explain that the proposed act would also legalize "hashish" and food products containing tetrahydrocannabinol (THC). Finally, they allege that the title and one-sentence "yes" statement prepared by the Attorney General and the Secretary are misleading because they do not mention hashish or edible products containing THC. They request a declaration that the Attorney General's certification and summary are improper, and an order enjoining the Secretary from placing the matter on the ballot. They also ask the court to exercise its power under § 53 to order the Attorney General and the Secretary to amend the title and the one-sentence "yes" statement.[12] A single justice of this court reported the Hensley case to the full court without decision.

_____

[12] Under G. L. c. 54, § 53, any action seeking an amendment of the title or one-sentence statements must be commenced in the

The plaintiffs in the Allen case, sixty-three registered Massachusetts voters, commenced their action in the county court on May 10, 2016.  They allege that the title given to the initiative by the Attorney General and Secretary, "Marijuana Legalization," is false and misleading because the proposed act would not "fully legalize marijuana," and because it makes no mention of the proposed act's "regulation" and "taxation" of marijuana.  They also claim that the inclusion of the words "including tetrahydrocannabinol (THC)" in the "yes" statement is neither fair nor neutral.  They also allege, among other things, that the one-sentence "yes" statement is misleading because it incorrectly states that "marijuana accessories" would be taxed under the new law.  They ask the court for an order pursuant to G. L. c. 54, § 53, amending the title and the "yes" statement. A single justice of this court reported the Allen case to the full court without decision.

Discussion.  1.  Related subjects.  We first address the Hensley plaintiffs' claim that the Attorney General's certification of the proposed act violated art. 48, The

---

county court within twenty days after their publication in the Massachusetts register.  Here, the plaintiffs commenced their action before the title and statements were published.  That misstep is of no consequence, however, because the draft versions of the title and one-sentence statements that were available at the time the plaintiffs commenced their action were no different from the final versions published in the Massachusetts Register a few days later.

Initiative, II, § 3, as amended by art. 74, because it combines two unrelated subjects:  marijuana legalization and a "preferential licensing system that turns non-profit, medical marijuana treatment centers into profit-making businesses."

There is no single "bright-line" test for determining whether an initiative meets the related subjects requirement. See Abdow v. Attorney Gen., 468 Mass. 478, 500 (2014), quoting Carney v. Attorney Gen., 447 Mass. 218, 226 (2006) (Carney I), S.C., 451 Mass. 803 (2008).  We do not construe the requirement so narrowly as to "frustrate the ability of voters to use the popular initiative as 'the people's process' to bring important matters of concern directly to the electorate" by effectively confining each petition to a single subject; we recognize that the delegates to the constitutional convention that approved art. 48 permitted more than one subject to be included in a petition.  Abdow, supra at 499.  Nor do we construe the requirement "so broadly that it allows the inclusion in a single petition of two or more subjects that have only a marginal relationship to one another, which might confuse or mislead voters, or . . . place them in the untenable position of casting a single vote on two or more dissimilar subjects."  Id.  See Dunn v. Attorney Gen., 474 Mass.    ,    (2016) (describing adoption of related subjects requirement in art. 48 at constitutional convention of 1917-1918).

Balancing these concerns, the related subjects requirement is met where "one can identify a common purpose to which each subject of an initiative petition can reasonably be said to be germane." Abdow, 468 Mass. at 499, quoting Massachusetts Teachers Ass'n v. Secretary of the Commonwealth, 384 Mass. 209, 219-220 (1981). "We have not construed this requirement narrowly nor demanded that popular initiatives be drafted with strict internal consistency." Abdow, supra at 500, quoting Mazzone v. Attorney Gen., 432 Mass. 515, 528-529 (2000). But we have also cautioned that "[a]t some high level of abstraction, any two laws may be said to share a 'common purpose.'" Abdow, supra, quoting Carney I, 447 Mass. at 226. Consequently, we have posed two questions in considering whether an initiative petition meets the related subjects requirement: First, "[d]o the similarities of an initiative's provisions dominate what each segment provides separately so that the petition is sufficiently coherent to be voted on 'yes' or 'no' by the voters?" Abdow, supra, quoting Carney I, supra. Second, does the initiative petition "express an operational relatedness among its substantive parts that would permit a reasonable voter to affirm or reject the entire petition as a unified statement of public policy"? Abdow, supra at 501, quoting Carney I, 447 Mass. at 230-231. See Gray v. Attorney Gen., 474 Mass. , (2016) (discussing related subjects requirement).

The initiative petition in this case easily satisfies the related subjects requirement of art. 48. It lays out a detailed plan to legalize marijuana (with limits) for adult use and to create a system that would license and regulate the businesses involved in the cultivation, testing, manufacture, distribution, and sale of marijuana and that would tax the retail sale of marijuana to consumers. The possible participation of medical marijuana treatment centers in the commercial distribution of marijuana is adequately related to this over-all detailed plan.

At present, medical marijuana treatment centers in Massachusetts are governed by St. 2012, c. 369, the medical marijuana law adopted by the voting public in an initiative petition in November, 2012, and by the extensive regulations promulgated thereunder by the Department of Public Health. See 105 Code Mass. Regs. §§ 725.000 (2013). The proposed act would not revise the language of the medical marijuana law or its regulations. It would, however, permit an entity registered to operate a medical marijuana treatment center under the medical marijuana law also to apply for and obtain a license under the new law to operate a commercial marijuana establishment, and would allow the commercial operation to be at the same location as the medical marijuana center. The co-location of a commercial marijuana retail operation and a medical marijuana center would not relieve the center of its obligations under the

medical marijuana law and regulations; it would, however, subject the retail operation to the provisions of the new law and the new regulations. "A measure does not fail the relatedness requirement just because it affects more than one statute, as long as the provisions of the petition are related by a common purpose." Albano v. Attorney Gen., 437 Mass. 156, 161 (2002).[13]

The inclusion of medical marijuana treatment centers as potential retailers in the commercial market is simply one piece of the proposed integrated scheme. The fact that the initiative's proponents might have chosen instead to prohibit medical marijuana treatment centers from participation in the retail market does not affect the coherence of the proposal as a unified statement of public policy that is a proper subject for a "yes" or "no" vote. See Massachusetts Teachers Ass'n, 384 Mass. at 220 ("It is not for the courts to say that logically

---

[13] We need not resolve, at this juncture, any conflicts or inconsistencies between the differing statutory schemes if the proposed act were to pass (or, indeed, whether it would be possible for an entity simultaneously to comply with both schemes). The sole question before us is whether the subjects included in the proposed act are related for art. 48 purposes. "[A]rguments regarding the validity of an initiative petition, not based on failure to comply with art. 48, cannot be pursued unless and until the measure has been enacted." Ash v. Attorney Gen., 418 Mass. 344, 350 (1994), quoting Yankee Atomic Elec. Co. v. Secretary of the Commonwealth, 402 Mass. 750, 754 (1988) (declining to address contention that "if approved and enacted as law, the act will be invalid, independent of the requirements of art. 48").

and consistently other matters might have been included or that particular subjects might have been dealt with differently"). A voter who favors the legalization of marijuana but not the participation in the retail market of entities registered as medical marijuana treatment centers is free to vote "no" if he or she thinks that the dangers of mixing medical marijuana distribution with retail distribution overcome the benefits of the proposal, but the proposed act does not place anyone "in the untenable position of casting a single vote on two or more dissimilar subjects" (emphasis added). Abdow, 468 Mass. at 499.

2. Attorney General's summary. The plaintiffs in the Hensley case also challenge the Attorney General's summary of the proposed act. Article 48, The Initiative, II, § 3, as amended by art. 74, requires the Attorney General to prepare a "fair, concise summary" of each certified initiative petition. The summary is one of the key pieces of information available to voters both when they are asked to sign an initiative petition and when they ultimately vote on an initiative that has made its way onto the ballot. It is printed at the top of the blank petition forms used by the initiative's proponents to gather signatures. Id. It also appears in the Information for Voters guide (guide) that is prepared by the Secretary and sent to each

registered voter before the election.[14]  Finally, it appears on

the ballot itself.[15]

The basic legal principles used to evaluate whether a

summary is "fair" for art. 48 purposes were set out two years

ago in the Abdow case, as follows:

> "To be 'fair,' a summary 'must not be partisan, colored,
> argumentative, or in any way one sided, and it must be
> complete enough to serve the purpose of giving the voter
> who is asked to sign a petition or who is present in a
> polling booth a fair and intelligent conception of the main
> outlines of the measure.'  Sears v. Treasurer & Receiver
> Gen., 327 Mass. 310, 324 (1951).  'The Attorney General is

---

[14] The Information for Voters guide prepared by the
Secretary of the Commonwealth (Secretary) is a single,
comprehensive collection of the information that is officially
available to voters in advance of the election.  For each ballot
question, the guide contains (i) the title given to the question
by the Attorney General and the Secretary; (ii) the Attorney
General's summary in full; (iii) the two one-sentence statements
prepared by the Attorney General and the Secretary describing
the effect of a "yes" and a "no" vote; (iv) a statement prepared
by the Secretary of Administration and Finance describing the
fiscal impact of the proposed act; (v) any legislative committee
majority reports, together with the names of the majority and
minority members of the committees that may have considered the
proposed act; (vi) a statement of votes of the General Court on
the proposed act, if any; (vii) arguments, not exceeding 150
words each, for and against the proposed act submitted by its
proponents and opponents; and (viii) the full text of the
proposed act itself.  See art. 48, General Provisions, IV, of
the Amendments to the Massachusetts Constitution, as amended by
art. 108 of the Amendments; G. L. c. 54, §§ 53, 54.

[15] For each ballot question, the ballot contains a question
number, the Attorney General's summary, and the two one-sentence
"yes" and "no" statements prepared by the Attorney General and
the Secretary.  See art. 48, General Provisions, III, of the
Amendments to the Massachusetts Constitution, as amended by art.
74 of the Amendments; G. L. c. 54, § 42A.  For polling places
where voting machines are used, see G. L. c. 54, § 35A (last
sentence).

> not required to conduct a comprehensive legal analysis of the measure, including possible flaws. All the Constitution demands is a summary.' Mazzone, 432 Mass. at 532. See Ash [v. Attorney Gen., 418 Mass. 344, 349-350 (1994)]; Associated Indus. of Mass. v. Secretary of the Commonwealth, 413 Mass. 1, 12 (1992) ('Nothing in art. 48 requires the summary to include legal analysis or an interpretation'). Moreover, as we review the summary to determine whether the Attorney General has fulfilled her constitutional obligation, we keep in mind that '[t]he Attorney General's judgment concerning the form and content of the summary is entitled to some deference.' Id. at 11. 'Obviously, an element of discretion is involved in the preparation of a summary -- what to include, what to exclude, and what language to use. The exercise of discretion by the Attorney General, a constitutional officer with an assigned constitutional duty, should be given weight in any judicial analysis of the fairness and adequacy of a summary.' Massachusetts Teachers Ass'n, 384 Mass. at 230."

Abdow, 468 Mass. at 505-506.

The summary must be not only "fair" but "concise." Before its amendment by art. 74 in 1944, the original art. 48 required the Attorney General to provide a "description" of the proposed act, not a "fair, concise summary." "The word 'description' had been interpreted as implying a very substantial degree of detail and had resulted in very long and cumbersome statements of details of proposed laws." Sears, 327 Mass. at 324. When art. 48 was amended and the word "description" was replaced with the phrase "fair, concise summary," "the intention was to relax the requirements which had been found implicit in the word description. Conciseness is emphasized in [art. 48 as amended], and conciseness and completeness are often incompatible." Bowe

v. Secretary of the Commonwealth, 320 Mass. 230, 243 (1946).

See Massachusetts Teachers Ass'n, 384 Mass. at 227 ("Economy of

language and fairness are now emphasized").  Where, as here, the

initiative petition is twenty-five single-spaced pages in

length, drafting a fair summary that is also concise is a

challenging task.  "Nevertheless, there must be a real

'summary.' . . .  The word carries with it the idea that,

however much the subject matter may be condensed, the sum and

substance of it must remain.  No doubt details may be omitted or

in many instances covered by broad generalizations, but mention

must be made of at least the main features of the measure."

Sears, 327 Mass. at 324.  See Mazzone, 432 Mass. at 531.

a.  Concentration of THC.  The Hensley plaintiffs' first

challenge to the summary is that it does not use the words

"hashish" or "marijuana concentrate" or otherwise make clear

that the proposed act would legalize marijuana with a

concentration of THC that exceeds two and one-half per cent.

They are correct that the proposed act would have this effect.

They are incorrect, however, in suggesting that a reasonable

voter could not fairly infer that from the language of the

summary as written.

THC is the chemical "found in resin produced by the leaves

and buds primarily of the female cannabis plant" that is

"responsible for most of the intoxicating effects" of marijuana.

National Institute on Drug Abuse, Research Report Series: Marijuana, at 1 (rev. Mar. 2016). Under existing law, "marihuana," as defined in G. L. c. 94C, § 1,[16] is prosecutable as a class D substance under G. L. c. 94C, §§ 31 and 32C. Marijuana that contains a THC concentration that exceeds two and one-half per cent is prosecutable as a class C substance under G. L. c. 94C, §§ 31 and 32B, because it falls within the definition of THC under G. L. c. 94C, § 1.[17] However, because the definition of "marihuana" in G. L. c. 94C, § 1, makes no mention of THC, marijuana with a concentration of THC above two and one-half per cent is both "marihuana" and THC.

Under the proposed act, the definition of "marijuana" in chapter 94G, section 1 (g), makes explicit what is implicit in

---

[16] General Laws c. 94C, § 1, defines "marihuana" in relevant part as "all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; and resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin."

[17] General Laws c. 94C, § 1, defines tetrahydrocannabinol (THC) as "excluding marihuana except when it has been established that the concentration of [THC] in said marihuana exceeds two and one-half per cent.

the definition in G. L. c. 94C, § 1:  it includes THC.[18]  But the inclusion of THC in the definition is no more consequential than a definition of liquor that specifically includes mention of alcohol.  And a summary that speaks only of the legalization of the possession of marijuana in limited amounts by persons over the age of twenty-one, without making clear that it also legalizes the possession of the THC found in marijuana is no more unfair than a summary of a law ending a prohibition on liquor that speaks of the legalization of the possession of liquor by persons over the age of twenty-one without making clear that it also legalizes the possession of the alcohol found in liquor.  The average voter will understand that marijuana contains a chemical that gives it intoxicating effects (many may know that the chemical is called THC), that marijuana will vary in potency, and that all marijuana -- lower potency and higher potency alike -- is being proposed for legalization.[19,20]

---

[18] Under the proposed new chapter 94G, section 1 (g), marijuana would be defined in relevant part as "all parts of any plant of the genus Cannabis . . . whether growing or not; the seeds thereof; and resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin including tetrahydrocannabinol as defined in section 1 of chapter 94C of the General Laws" (emphasis added).

[19] The Hensley plaintiffs' focus on marijuana and marijuana products with higher concentrations of THC -- and their desire to have terms such as "hashish," "marijuana concentrate," or "tetrahydrocannabinol" included in the Attorney General's summary -- appears to be intended to lay the groundwork for an

b.  Marijuana products.  The plaintiffs next challenge the
summary on the ground that it does not adequately communicate
the array of items, in addition to marijuana in its ordinary
plant form, that would be legalized for adult use under the
proposed act.  As earlier noted,[21] the "marijuana products" and
"marijuana concentrate" covered by the proposed act would

_____

argument that higher potency marijuana and marijuana products
pose a potentially greater risk to a user's health.  This is an
argument that the plaintiffs can present to the voters in the
public discourse leading up to election day; it is not a matter
that is essential to a fair summary.

Including a reference to "hashish" would be especially
problematic.  That word is not defined in our General Laws or
used in the proposed act.  While it appears in some of the
decided cases, it has no single, fixed meaning in Massachusetts
law.

[20] We note that there is no limit on the permissible
concentrations of THC in medical marijuana under our existing
medical marijuana law.  See St. 2012, c. 369; 105 Code Mass.
Regs. §§ 725.000 (2013).  See also Report of the Special Senate
Committee on Marijuana § 2.6, at 28 (2016) ("Status of Medical
Marijuana Implementation"; "There are currently no THC potency
limits for medical marijuana . . .").  We also note that the
initiative petition for medical marijuana that was passed in
2012, and the Attorney General's summary of it, made no mention
of "hashish," "marijuana concentrate," or THC.

We also note that "marijuana" is defined in the medical
marijuana law, St. 2012, c. 369, § 2 (G), as having "the meaning
given 'marihuana' in Chapter 94C of the General Laws," without
an added reference to THC such as we have in the initiative
petition in this case.  This underscores our assertion that
marijuana does not stop being marijuana when its THC
concentration exceeds two and one-half per cent.  This is true
under the controlled substances statute, the medical marijuana
law, and proposed chapter 94G in this case.

[21] See notes 6 and 7, supra.

encompass, among other things, marijuana-infused edible products, beverages, ointments, oils, and concentrated marijuana resin in a variety of forms. The summary does not itemize, or even give a representative sample of, the specific types of items that would be covered. It speaks only generically in terms of "marijuana products."[22]

We are disappointed that the Attorney General's summary did not include a fair and neutral statement that marijuana products under the proposed act include, among other things, food and drink items that contain marijuana or marijuana concentrate to ensure that the electorate understands that "marijuana products" include edible products. We recognize that the Attorney General was faced with a challenging task in crafting a fair summary that met the art. 48 mandate of being "concise" for an initiative that was unusually detailed and complex, but we also recognize that a summary of even a detailed initiative proposal ought to be written in plain English that a reasonable voter can

---

[22] The summary refers to "marijuana products" in three places: (1) it alerts the reader in the second sentence of the opening paragraph that the proposed act will create, regulate, and tax "commerce in marijuana . . . and marijuana products"; (2) it states in the second sentence of the fourth paragraph that cities and towns may "determine whether to permit the selling of marijuana and marijuana products for consumption on the premises at commercial establishments," effectively informing the reader that marijuana products are something to be consumed; and (3) it states in the first sentence of the fifth paragraph that "retail sales of marijuana and marijuana products" would be taxed.

readily comprehend.  The use of a term of art whose meaning is unclear on its face, such as "marijuana products," although accurate, invites the risk that voters may not understand the meaning of the term and, therefore, the consequence of approval of the petition.[23]

We do not, however, find that risk so substantial in this case as to render the summary constitutionally inadequate.  We reach this conclusion for two reasons.  First, the summary clearly indicates that there will be commerce in both "marijuana" and "marijuana products," see note 22, supra, which informs the reader that "marijuana" and "marijuana products" are not the same thing.  A reasonable reader should understand that a "marijuana product" is something produced with or from marijuana.  The summary also informs the reader that a marijuana product is something to be "consumed," possibly on the premises where it is purchased.  See note 22, supra.  Many voters will have at least a general awareness that marijuana can appear in baked products such as cookies and "brownies," and therefore will likely recognize that the consumption of "marijuana products" will include edible products.

---

[23] We do not suggest that a summary must include terms that do not already appear in the initiative petition.  The proposed act in this case specifically defines "marijuana products" as including "edible products, beverages, topical products, ointments, oils, and tinctures."  See note 6, supra.

Second, the summary is not the only source of information for voters.  They will have available, both in their information guide and on the ballot, the "yes" and "no" statements prepared by the Attorney General and the Secretary.  In part 3, infra, we require the Attorney General and the Secretary to amend the "yes" statement so that it makes an explicit reference to edible marijuana products.  The voters will also have in the information guide the "for" and "against" statements prepared by the petition's supporters and opponents, and the full text of the proposed act.  And, in light of the controversy both here and in other States surrounding the legalization of marijuana, they will have the benefit of what will surely be a spirited public debate on the petition generally and on the legalization of edible marijuana products in particular.  The availability of other information does not relieve the Attorney General of her duty to prepare a constitutionally adequate summary, but it does give us confidence that the electorate will likely understand that the scope of the petition includes edible marijuana products.[24]

_____

[24] With respect to edible marijuana products, we also reject any suggestion by the Hensley plaintiffs that the summary is deficient because it does not mention existing food safety laws and the effect of the proposed act on them.  The proposed act states that chapter 94G "shall not exempt marijuana or marijuana products from [G. L. c. 94, §§ 186-195], relating to adulteration and misbranding of food, drugs and various articles.  Marijuana included in a marijuana product

c. <u>Effect on medical marijuana law</u>. The Hensley plaintiffs' third and final challenge to the summary is that it misrepresents the effect that the proposed act will have on medical marijuana treatment centers. The summary states that the proposed act "would not affect existing law regarding medical marijuana treatment centers."

The Attorney General correctly points out that the plaintiffs did not make this claim in their complaint and raise it now for the first time before the full court. It is therefore waived. In any event, this statement in the summary does not make it unfair under art. 48.

The statement is technically correct -- nothing in the existing law on medical marijuana would change. Medical marijuana treatment centers are currently governed by St. 2012, c. 396, and they would continue to be so even if this proposed act were to be adopted. Neither the language of c. 396 nor its strict requirements would be changed. Although entities registered as medical marijuana treatment centers could also obtain a license to operate a commercial marijuana establishment under the proposed act, they would not thereby be relieved of their obligations under the medical marijuana law.[25]

manufactured in compliance with the regulations under this chapter shall not be considered an adulterant."

[25] The proposed new chapter 94G would provide, as stated above, that "[t]his chapter shall not be construed to affect the

We recognize that the statement in the summary poses some risk of confusion because medical marijuana treatment centers would be potential licensees in the new commercial market if the petition were approved, and therefore the proposed act would affect medical marijuana centers even if it does not affect the "existing law" regarding them.  Saying that the proposed act "would not affect existing law" regarding medical marijuana centers might be read (albeit mistakenly) to mean that its passage would have no effect on medical marijuana centers.  As with the language regarding "marijuana products," the Attorney General could have done a better job to avoid this risk of confusion.  But we do not think that this unfortunate phrasing

---

provisions of chapter 369 of the acts of 2012, relating to the medical use of marijuana as enacted by the people in the [S]tate election of 2012."  The plaintiffs correctly point out that the proposed act states that it would not affect the existing law on "the medical use of marijuana," whereas the summary states that the proposed act would not affect the existing law on "medical marijuana treatment centers."  This is not a meaningful distinction.  Under the medical marijuana law, the phrase "medical use of marijuana" is defined in such a way that it refers to the activities of medical marijuana treatment centers, and not just to "use" in the colloquial sense of consumption by qualifying patients.  St. 2012, c. 369, § 2 (I) (defining "medical use of marijuana" as "the acquisition, cultivation, possession, processing (including development of related products such as food, tinctures, aerosols, oils, or ointments), transfer, transportation, sale, distribution, dispensing, or administration of marijuana, for the benefit of qualifying patients in the treatment of debilitating medical conditions, or the symptoms thereof").  The summary is therefore accurate in this regard.

makes the summary unfair for art. 48 purposes, especially where it is a true statement as written.

In determining whether a summary is "fair," an error or omission "must be assessed in the context of the entire proposal and its likely impact on the voters." Massachusetts Teachers Ass'n, 384 Mass. at 234. The summary here, despite the risk of confusion arising from the phrasing of the sentence regarding marijuana treatment centers, gives "a fair and intelligent conception of the main outlines of the measure." Abdow, 468 Mass. at 505, quoting Sears, 327 Mass. at 324. See, e.g., Massachusetts Teachers Ass'n, supra at 226-236 (summary was fair despite multiple omissions and one clear error that affected many municipalities); Opinions of the Justices, 357 Mass. 787, 798-801 (1970) (five Justices found summary to be fair despite omission of certain details in summary of proposed constitutional amendment). If the plaintiffs believe that the proposed act's provisions would adversely affect the operation of medical marijuana treatment centers by permitting them also to engage in commercial sales, and that this is important to the voters, they are free to say so in the "against" statement and in their public campaign to defeat the initiative petition.

3. Title and "yes" and "no" statements. We now turn to the title ("Marijuana Legalization") and the one-sentence "yes" and "no" statements prepared jointly by the Attorney General and

the Secretary pursuant to G. L. c. 54, § 53. The one-sentence statements assert:

> "A YES VOTE would allow the possession, use, distribution, and cultivation of marijuana, including tetrahydrocannabinol (THC), in limited amounts by persons 21 and older and would provide for the regulation and taxation of commercial sale of such marijuana, marijuana accessories, and marijuana products.

> "A NO VOTE would make no change in current laws relative to marijuana."

Section 53 requires that the one-sentence statements be "fair and neutral." It further provides that, in an action timely brought by at least fifty registered voters, "[t]he court may issue an order requiring amendment by the attorney general and the state secretary only if it is clear that the title [or] [one]-sentence statement . . . is false, misleading or inconsistent with the requirements of this section."

The Hensley plaintiffs claim that it is clear that the title and one-sentence statements are misleading because they fail to mention that the proposed measure would legalize the possession, use, distribution, and cultivation of "hashish," and the possession, use, and distribution of edible products containing THC.[26] The Allen plaintiffs contend that the title is

---

[26] The Hensley plaintiffs also ask that we order changes be made to the summary. They cite no authority for us to do so, and we are not aware of any instance in which the court has done so in the past. Our authority to order an amendment of the title and one-sentence "yes" and "no" statements derives from G. L. c. 54, § 53; the statute does not authorize us to order an

false and misleading because the proposed measure does not legalize the possession or use of marijuana by persons under the age of twenty-one, or legalize the possession of marijuana by adults in amounts in excess of stated limits. They also claim that the title is misleading because it makes no mention of the regulation and taxation of marijuana. The Allen plaintiffs further contend that the one-sentence description of the effect of a "yes" vote is not fair and neutral because it specifically added the words, "including tetrahydrocannabinol (THC)," at the suggestion of the petition's opponents, even though THC is an active ingredient in all marijuana. They also contend that the "yes" statement is misleading because it incorrectly states that "marijuana accessories" would be taxed under the new law.

This is the first time a challenge to a title and the one-sentence statements has come before the full court. In two previous cases in which a title or one-sentence statement has

---

amendment of the summary. Nor are we granted such authority under art. 48, which governs the summary. In the absence of statutory or constitutional authority, we conclude that we have no authority to order an amendment of a summary. Cf. Dunn v. Attorney Gen., 474 Mass.    ,    (2016) (court has no power to order amendment of one-sentence statements unless action seeking amendment is brought under § 53). We also note that any revision of the summary at this late stage of the initiative process would pose formidable practical problems because the summary has appeared at the top of the petition forms that have been used to collect tens of thousands of signatures, so any revision would call into question the validity of those signatures.

been challenged, the matter was resolved in the county court by a single justice.[27]

We do not, however, write on a clean slate.  Section 53 plainly states that we may order amendment of the title or one-sentence statements "only if it is clear" that it is false, misleading, or otherwise inconsistent with the requirements of § 53, which suggests that the joint effort of the Attorney General and Secretary in crafting the title and statements is entitled to some deference.  Such deference is entirely appropriate, given the challenge of creating a title that fairly characterizes a sometimes complex petition and of drafting a single sentence that fairly and neutrally describes the consequence of a "yes" or "no" vote regarding such a petition. Deference, of course, does not mean abdication, so we will exercise our statutory authority where needed to ensure that the title and one-sentence statements are neither false nor misleading, and that the one-sentence statements are fair and neutral.  In doing so, we recognize that the title and one-sentence statements are only two of the pieces of information that will be provided to voters, and we must consider whether they are false or misleading in the context of the other information that will be furnished to voters in the information

---

[27] See Heilman vs. Attorney Gen., SJ-2012-0211 (June 28, 2012); Fifty Registered Voters vs. Attorney Gen., SJ-2000-0212 (July 18, 2000).

guide prepared by the Secretary and on the ballot. Ultimately, we shall endeavor to ensure that the information provided to voters in the title and one-sentence statements is fair, neutral, and accurate so that all sides to the ballot question do battle on an even playing field and so that the election is not marred by misunderstanding or confusion.

With these thoughts in mind, we conclude that both the Hensley plaintiffs and the Allen plaintiffs have identified fundamental flaws in the title and one-sentence statements that require our revision. As to the title, we agree with the Allen plaintiffs that the proposed measure has three main features -- legalization, regulation, and taxation -- and that it is unfair and clearly misleading to characterize the measure solely as "Marijuana Legalization." We therefore order that the title be amended to read, "Legalization, Regulation, and Taxation of Marijuana."[28]

---

[28] We reject the argument of the Allen plaintiffs that the title should also include a reference to "adult use." Nothing about the word "legalization" in this context implies that the legalization would be unlimited. The average voter understands, for example, that alcohol is "legal," but not for underage drinkers. The one-sentence "yes" statement and the summary also make it abundantly clear that the proposed act applies only to persons who are twenty-one and older. We also reject the argument of the Hensley plaintiffs that specific references to "hashish" and "food products with tetrahydrocannabinol (THC)" must appear in the title in order to make it fair.

With respect to the "yes" statement, we conclude that it is clearly misleading in some respects and order that it be amended as follows:

> "A YES VOTE would allow persons 21 and older to possess, use, and transfer marijuana and products containing marijuana concentrate (including edible products) and to cultivate marijuana, all in limited amounts, and would provide for the regulation and taxation of commercial sale of marijuana and marijuana products."

The amended statement makes five changes in the statement that was prepared by the Attorney General and the Secretary. The most significant change is the replacement of the phrase "marijuana, including tetrahydrocannabinol (THC)" with the phrase "marijuana and products containing marijuana concentrate (including edible products)." The original statement is misleading in that it fails to make clear that the new law will allow, in limited amounts, not only the possession and use of marijuana but also the possession and use of products containing marijuana concentrate, including edible products. The reference to "marijuana products" in the second clause of the sentence ("and would provide for the regulation and taxation of commercial sale of such marijuana, marijuana accessories, and marijuana products") does not adequately inform voters that the proposed act would legalize the sale of edible marijuana products, especially where the summary fails to make this as clear as it could. We struck the phrase, "including

tetrahydrocannabinol (THC)" because it is both redundant, in that all marijuana includes THC, and potentially misleading, because it might erroneously suggest that the new law will legalize the possession and use of synthetic THC that did not derive from the Cannabis plant.

The other four changes are as follows:

i. We changed the word "distribution" to "transfer," to match the actual word used in the proposed act. The word "distribution" has a connotation in criminal narcotics law that is not appropriate here.[29]

ii. Because "products containing marijuana concentrate (including edible products)" cannot be "cultivated," we added a separate phrase referring to the cultivation of marijuana.

iii. We added the word "all" to the phrase "in limited amounts" so as to make clear that the phrase refers to all of the mentioned activities, i.e., possession, use, transfer, and cultivation.

iv. We struck the words "marijuana accessories." The original statement incorrectly suggests that the new law would impose an additional tax on marijuana accessories, which it does not. Accessories would be taxed only under the existing sales tax statute, not under the new law.

We reject the parties' requests for other changes in the statement.

We have considered the alternative of issuing an order requiring the Attorney General and the Secretary to amend the

---

[29] We reject the argument by the Allen plaintiffs that the words "without remuneration" should also be added. That level of detail is not needed in the one-sentence statement in order to make it fair, and the point is adequately made in the summary.

statement in light of our concerns rather than redrafting it ourselves, but there is simply not time to pursue that alternative if the guide and the ballot are to be sent to be printed as scheduled in early July. We are satisfied that the statement is fair and neutral, and neither false nor misleading, as we have amended it.

4. Timing of actions under G. L. c. 54, § 53. In her reservation and report in the Hensley case, the single justice commented on the lateness of the plaintiffs' constitutional challenges to the Attorney General's certification and summary. Their action was brought inexcusably late. In Dunn, 474 Mass. at   , which we also decide today, we discuss the importance of commencing actions raising art. 48 challenges to a petition much earlier in the initiative process, preferably not later than February 1 of the election year, so that the action can proceed at a more orderly pace. We now take this opportunity to address the timing of the Allen action, which was brought pursuant to § 53.

Under § 53, after the Attorney General and the Secretary jointly prepare the ballot question title and the one-sentence "yes" and "no" statements, the Secretary is required to publish them in the Massachusetts Register no later than "the second Wednesday in May" of the election year. Challenges to the title and statements must be commenced in the county court no more

than twenty days after publication.  This means that such actions may be commenced in late May or, in some years, early June, and that there inevitably will be a mad scramble to have the cases briefed, argued, and decided, because we make every effort to resolve ballot cases before the voter information guide and ballots are sent for printing in early July.[30]

Section 53 sets a deadline for publication; it does not bar earlier publication.  To avoid this mad scramble, we ask the Attorney General and the Secretary to consider preparing and publishing the title and one-sentence statements under § 53 no later than twenty days in advance of February 1 of the election year, so that parties who commence an action asserting constitutional challenges under art. 48 might also bring a statutory claim under § 53, in the same case at the same time. If that were done, challenges brought under the statute would proceed in the normal course, at a more orderly pace, and not, as here, at the proverbial eleventh hour.

Alternatively, we ask the Legislature to consider amending the statute, either along the lines described above or in some other reasonable fashion, so that statutory actions challenging

---

[30] The parties in the Allen case acted timely under the statute.  Nothing we say is intended as criticism of their conduct.  Indeed, the title and statements in this case were published a few days before the statutory deadline, and the Allen plaintiffs commenced their action in the county court a few days after that.

titles and statements can be brought earlier in the initiative process to allow the court to give them the full attention they deserve in a more manageable time frame.

Conclusion.  A judgment shall enter in the county court in the Hensley case (1) declaring that the initiative petition contains only related subjects within the meaning of art. 48, and that the Attorney General's certification of the measure was therefore correct; and (2) declaring that the Attorney General's summary of the petition was "fair" under art. 48.  An order shall enter in the county court in both the Hensley case and the Allen case, pursuant to G. L. c. 54, § 53, requiring the Attorney General and the Secretary of the Commonwealth to amend the title so that it provides, "Legalization, Regulation, and Taxation of Marijuana"; and requiring them to amend the one-sentence "yes" statement so that it reads as follows:

> "A YES VOTE would allow persons 21 and older to possess, use, and transfer marijuana and products containing marijuana concentrate (including edible products) and to cultivate marijuana, all in limited amounts, and would provide for the regulation and taxation of commercial sale of marijuana and marijuana products."

So ordered.

<u>Appendix.</u>

"<u>SUMMARY OF 15-27</u>

"The proposed law would permit the possession, use, distribution, and cultivation of marijuana in limited amounts by persons age 21 and older and would remove criminal penalties for such activities.  It would provide for the regulation of commerce in marijuana, marijuana accessories, and marijuana products and for the taxation of proceeds from sales of these items.

"The proposed law would authorize persons at least 21 years old to possess up to one ounce of marijuana outside of their residences; possess up to ten ounces of marijuana inside their residences; grow up to six marijuana plants in their residences; give one ounce or less of marijuana to a person at least 21 years old without payment; possess, produce or transfer hemp; or make or transfer items related to marijuana use, storage, cultivation, or processing.

"The measure would create a Cannabis Control Commission of three members appointed by the state Treasurer which would generally administer the law governing marijuana use and distribution, promulgate regulations, and be responsible for the licensing of marijuana commercial establishments.  The proposed law would also create a Cannabis Advisory Board of fifteen members appointed by the Governor.  The Cannabis Control Commission would adopt regulations governing licensing qualifications; security; record keeping; health and safety standards; packaging and labeling; testing; advertising and displays; required inspections; and such other matters as the Commission considers appropriate.  The records of the Commission would be public records.

"The proposed law would authorize cities and towns to adopt reasonable restrictions on the time, place, and manner of operating marijuana businesses and to limit the number of marijuana establishments in their communities.  A city or town could hold a local vote to determine whether to permit the selling of marijuana and marijuana products for consumption on the premises at commercial establishments.

"The proceeds of retail sales of marijuana and marijuana products would be subject to the state sales tax and an additional excise tax of 3.75%.  A city or town could impose a

separate tax of up to 2%.  Revenue received from the additional state excise tax or from license application fees and civil penalties for violations of this law would be deposited in a Marijuana Regulation Fund and would be used subject to appropriation for administration of the proposed law.

"Marijuana-related activities authorized under this proposed law could not be a basis for adverse orders in child welfare cases absent clear and convincing evidence that such activities had created an unreasonable danger to the safety of a minor child.  The proposed law would not affect existing law regarding medical marijuana treatment centers or the operation of motor vehicles while under the influence.  It would permit property owners to prohibit the use, sale, or production of marijuana on their premises (with an exception that landlords cannot prohibit consumption by tenants of marijuana by means other than by smoking); and would permit employers to prohibit the consumption of marijuana by employees in the workplace.  State and local governments could continue to restrict uses in public buildings or at or near schools.  Supplying marijuana to persons under age 21 would be unlawful.

"The proposed law would take effect on December 15, 2016."