NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13559

MARTIN EL KOUSSA & others[1]  vs.  ATTORNEY GENERAL & others.[2]


Suffolk.     May 6, 2024. - June 27, 2024.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
& Wolohojian, JJ.


Initiative.  Constitutional Law, Initiative petition.  Attorney
    General.  Network Companies.  Employment.



    Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on February 1, 2024.

    The case was reported by Kafker, J.


    Jennifer Grace Miller for the plaintiffs.
    Anne Sterman, Assistant Attorney General, for the Attorney
General & another.
    Thaddeus Heuer (Seth Reiner also present) for the
interveners.
    The following submitted briefs for amici curiae:

_____

    [1] Yessenia Alfaro; Francis X. Callahan, Jr.; Melody
Cunningham; Adam Kaszynski; Katie Murphy; Juliet Schor; and
Alcibiades Vega, Jr.

    [2] Secretary of the Commonwealth; Charles Ellison, Abigail
Kennedy Horrigan, Brian Gitschier, Daniel Svirsky, Sean Rogers,
Caitlin Donovan, Brendan Joyce, Troy McHenry, Kim Ahern, and
Christina M. Ellis-Hibbett, interveners.

Stevan E. Johnson, pro se.

Alfred Gordon O'Connell for United Food and Commercial Workers International Union.

Michael T. Anderson for Economic Policy Institute.

Joel Fleming for Open Markets Institute.

Gary J. Lieberman for Chamber of Progress.

Nicole J. Daro & Travis S. West, of California, Bryan Decker, & Jennifer Rubin for National Nurses United.

Jason Salgado, MaryGrace Menner, & Ilana B. Gelfman for Massachusetts Worker Centers.

Daniel A. Rubens & Eliza A. Lehner, of New York, Eric A. Shumsky, of the District of Columbia, & James Anglin Flynn for Retailers Association of Massachusetts & others.

Jonathan B. Miller for Public Rights Project & others.

Matthew Ginsburg, Raven L. Hall, & Leila Ouchchy, of the District of Columbia, for American Federation of Labor and Congress of Industrial Organizations.

Adam Cederbaum, Corporation Counsel, & Randall Maas, Assistant Corporation Counsel, for city of Boston.

Michael A. Feinberg for International Brotherhood of Teamsters.

Shannon Liss-Riordan for Justice at Work.

Rhonda T. Maloney, Thomas R. Murphy, Kevin J. Powers, & Jennifer A. Denker for Massachusetts Academy of Trial Attorneys.

Michael Holecek, of California, & Joshua S. Lipshutz for Awet Teame & others.

Jonathan D. Newman & Jacob J. Demree, of the District of Columbia, & Thomas R. Landry for North America's Building Trades Unions.

Stacie Sobosik for Massachusetts Coalition for Occupational Safety and Health & another.

Matthew Carrieri for National Employment Law Project.

Kevin P. Martin, William E. Evans, & Jesse Lempel for Chamber of Commerce of the United States of America & another.

Amira Mattar, of New York, John Bonifaz, Ben Clements, & Courtney Hostetler for Free Speech for People.

Lori A. Jodoin, Rebecca Pontikes, & Nafisa Bohra for Massachusetts Employment Lawyers Association.

WOLOHOJIAN, J.  This mandamus action concerns five cognate ballot initiative petitions.  All five petitions are designed to

ensure that "app-based drivers" (drivers)[3] are not classified as employees of delivery network companies[4] or transportation network companies (collectively, companies),[5] thereby to exclude them from the rights, privileges, and protections that our General and Special Laws confer on employees. Three of the five petitions couple this deprivation with "minimum compensation, healthcare stipends, earned paid sick time, and occupational accident insurance." The other two do not. This case calls upon us to decide whether the Attorney General properly certified the petitions under art. 48 of the Amendments to the Massachusetts Constitution and whether the Attorney General's summaries of the petitions are fair and concise. Seeing no error, we remand the case to the county court for entry of a

---

[3] An "[a]pp-based driver" is defined as "a person who is a [delivery network company] courier, a [transportation network company] driver, or both, who has a contract with a network company, and for whom" various requirements are met.

[4] As defined by the three long-form petitions, a delivery network company is "a business entity that (a) maintains an online-enabled application or platform used to facilitate delivery services within the Commonwealth and (b) maintains a record of the amount of engaged time and engaged miles accumulated by [its] couriers." The two short-form petitions omit clause (b) from the definition.

[5] The petitions incorporate the definition of "transportation network company" contained in G. L. c. 159A 1/2, § 1, which is "a corporation, partnership, sole proprietorship or other entity that uses a digital network to connect riders to drivers to pre-arrange and provide transportation."

declaration that the Attorney General's certifications and summaries comply with the requirements of art. 48.[6]

Background. In August 2023, a group of Massachusetts voters (proponents) submitted to the Attorney General for approval five initiative petitions seeking to establish that drivers are not employees of the companies for purposes of the General and Special Laws.[7] The Attorney General thereafter certified that each petition met art. 48's requirements and prepared a summary for each initiative. The plaintiffs, a different group of registered voters, then brought this mandamus

---

[6] We acknowledge the amicus briefs submitted by Stevan E. Johnson; United Food and Commercial Workers International Union; Economic Policy Institute; Open Markets Institute; Chamber of Progress; National Nurses United; Massachusetts Worker Centers; Retailers Association of Massachusetts, Marketplace Industry Association, and United Regional Chamber of Commerce; civil rights organizations and legal scholars; American Federation of Labor and Congress of Industrial Organizations; city of Boston; International Brotherhood of Teamsters; Justice at Work; Massachusetts Academy of Trial Attorneys; Awet Teame, Dave Beyna, Joe Lucacio, Lisa McRobbie, Luis Ramos, Octavio Mejia-Suarez, and Jacqueline Grappi; North America's Building Trades Unions; Massachusetts Coalition for Occupational Safety and Health and Workers' Injury Litigation Group; National Employment Law Project; Chamber of Commerce of the United States of America and Associated Industries of Massachusetts; Free Speech for People; and Massachusetts Employment Lawyers Association.

[7] While the proponents originally put forth nine petitions, they later informed the Secretary of the Commonwealth that they would not seek voters' signatures on four of the nine. The remaining five are the petitions at issue in this case.

action to challenge the Attorney General's certifications and summaries.[8]

The proponents consistently and repeatedly have represented, including to this court through their counsel, that although they have not yet determined which petition it will be, only one of the five petitions will be placed on the November ballot -- a representation upon which we rely and upon which this decision depends.[9]  Accordingly, we assess each petition singly to determine whether it was properly certified and summarized by the Attorney General.  That said, because the petitions share certain common salient features that bear on the art. 48 analysis, we group them in the same way as the parties: the so-called short-form petitions (which do not provide the drivers with any benefits) and the so-called long-form petitions (which do).

1.  <u>Short-form petitions</u>.  There are two short-form petitions:  petition 23-29, designated Version F by the Attorney General (Version F); and petition 23-32, designated Version I by the Attorney General (Version I).  The stated purpose of each short-form petition is to "clarify that app-based drivers are

---

[8] The complaint was filed in the county court, and a single justice reserved and reported the matter to the full court.

[9] At oral argument, the Attorney General and counsel for the plaintiffs stated that they have no reason to doubt the proponents' counsel's representation.

not employees, and network companies are not employers, . . . guaranteeing app-based drivers the freedom and flexibility to choose when, where, how, and for whom they work."  Version F seeks to accomplish this aim by declaring as a general proposition that drivers are not employees for purposes of G. L. cc. 149, 151, 151A, and 152.  Version I seeks to accomplish the same goal but does so by amending specific provisions of cc. 149, 151A, and 152 so as to take drivers outside the definition of employees for purposes of those chapters as well as c. 151.  In addition, both short-form petitions would create a new proposed law, G. L. c. 159AA, to establish defined terms governing the relationship between the drivers and the companies.

Both short-form petitions would exclude drivers from the broad protections, rights, and privileges to which employees are entitled under G. L. cc. 149, 151, 151A, and 152, including those pertaining to fair wages, workers' compensation insurance, unemployment insurance, and protections against discrimination by employers based on age and gender.  See G. L. cc. 149 ("Labor and Industries"), 151 ("Minimum Fair Wages"), 151A ("Unemployment Insurance"), and 152 ("Workers Compensation").

2.  <u>Long-form petitions</u>.  There are three long-form petitions:  petition 23-25, designated Version B by the Attorney General (Version B); petition 23-30, designated Version G by the

Attorney General (Version G); and petition 23-31, designated Version H by the Attorney General (Version H). The stated purpose of the three long-form petitions is to "define and regulate the relationship between network companies and app-based drivers." Like the short-form petitions, the long-form petitions would operate to exclude the drivers from the rights, protections, and privileges afforded to employees under the General and Special Laws, although they do so differently and to different degrees:

- Version B would exclude drivers from being deemed employees for all purposes under all the General and Special Laws. No other version has the same operative breadth and effect on existing law as does Version B.

- Version G would declare as a general proposition that drivers are not employees for purposes of G. L. cc. 149, 151, 151A, and 152. In this sense, Version G is similar in operative scope to short-form Version F.

- Version H would amend specific provisions of G. L. cc. 149, 151A, and 152 so as to take drivers outside the definition of employees for purposes of those chapters as well as G. L. c. 151. Version H is similar in this sense to the operative scope of short-form Version I.

Like the short-form petitions, the long-form petitions would create a new proposed law, G. L. c. 159AA, to establish defined

terms governing the relationship between the drivers and the companies.

Unlike the short-form petitions, however, the long-form petitions establish some defined benefits for drivers, such as a guaranteed net-earning floor, a healthcare stipend, paid sick time, and occupational accident insurance. The long-form petitions would give drivers fewer benefits and protections than employees receive under our current laws. For example, each of the petitions excludes drivers from the antidiscrimination protections afforded employees under G. L. c. 149 and also, in the case of Version B, under G. L. c. 151B, without providing any similar protection in exchange.

Discussion. The plaintiffs argue that the petitions do not meet the related subjects requirement of art. 48 because they lack a common purpose. In addition, they argue that Version B "inappropriately asks voters for an exemption from the entirety of Massachusetts law." The plaintiffs also argue that the three long-form versions contain prohibited "sweeteners" that are misleadingly described. They also argue that the petitions are designed to confuse by using dense and technical language. Finally, the plaintiffs challenge the Attorney General's summaries of the five petitions on the ground that they do not adequately describe the scope and effect of the petitions,

including the breadth of the employment rights and protections they would displace.

1. _Certifications; related subjects requirement_.  As we have already noted, the Attorney General certified that the petitions were in proper form for submission to Massachusetts voters and, among other things, that they contain only subjects that are related or mutually dependent.  See art. 48, The Initiative, II, § 3, as amended by art. 74.  We review the Attorney General's certifications de novo.  Anderson v. Attorney Gen., 479 Mass. 780, 785 (2018).  In conducting this review, we are guided by the "firmly established principle that art. 48 is to be construed to support the people's prerogative to initiate and adopt laws" (citation omitted), Abdow v. Attorney Gen., 468 Mass. 478, 487 (2014), while keeping in mind that we are "obligated to safeguard the integrity of the initiative petition process by requiring that those seeking to change the law strictly comply with art. 48," Anderson, 479 Mass. at 785-786.

To determine whether an initiative petition contains only related subjects, we ask whether "one can identify a common purpose to which each subject of an initiative petition can reasonably be said to be germane."  Massachusetts Teachers Ass'n v. Secretary of the Commonwealth, 384 Mass. 209, 219-220 (1981).  "At some high level of abstraction, any two laws may be said to share a 'common purpose,'" Carney v. Attorney Gen., 447 Mass.

218, 226 (2006), S.C., 451 Mass. 803 (2008), but "the related subjects requirement is not satisfied by a conceptual or abstract bond," Gray v. Attorney Gen., 474 Mass. 638, 648 (2016). "There is no bright-line rule to follow in making such a determination. Rather, the question is a matter of degree." Colpack v. Attorney Gen., 489 Mass. 810, 814 (2022).

All five petitions at issue in this case seek to define and govern the relationship between drivers and companies. The short-form petitions do so by ensuring that drivers would not be considered employees for purposes of G. L. cc. 149, 151, 151A, and 152. This unitary purpose is focused and cohesive, and we therefore conclude that each short-form petition has a common purpose. See, e.g., Craney v. Attorney Gen., 494 Mass. (2024) (affirming certification of petition proposing "integrated scheme by which drivers may organize and collectively bargain with companies"). Although the short-form petitions would have the effect of excluding drivers from the broad panoply of rights, protections, and privileges afforded "employees" under cc. 149, 151, 151A, and 152, the effect of the petitions is not determinative. "[W]e have never held that relatedness is to be evaluated in terms of an initiative's effect on existing law." Weiner v. Attorney Gen., 484 Mass. 687, 693 (2020).

The long-form petitions are different in the sense that they have two major aspects:  the first ensures that drivers would not be considered employees for various or all (depending on the petition version) of the General and Special Laws; the second makes available to the drivers certain limited benefits to which they would not otherwise be entitled as nonemployees. Although the first excludes drivers from the important and far-reaching rights, privileges, and protections to which employees are entitled under existing law while the second gives limited benefits in return, this paired "take and give" serves a common purpose:  the regulation of the relationship between the drivers and the companies.  "An initiative petition may simultaneously broaden and restrict an entitlement," in this case the rights and benefits associated with the relationship between drivers and companies, and still meet the related subjects requirement. Craney, 494 Mass. at   .  See Colpack, 489 Mass. at 819 ("an initiative petition need not focus solely on loosening [or tightening] restrictions in order to meet the related subjects requirement of art. 48"); Weiner, 484 Mass. at 694, quoting Mazzone v. Attorney Gen., 432 Mass. 515, 528-529 (2000) ("[t]he provisions of an initiative petition need not be 'drafted with strict internal consistency'").

"[I]n addition to considering whether the subjects of an initiative petition share a common purpose, we . . . examine[]

two more specific questions." Colpack, 489 Mass. at 815.

First, we consider whether

> "'the similarities of an initiative's provisions dominate
> what each segment provides separately so that the petition
> is sufficiently coherent to be voted on "yes" or "no" by
> the voters,' [and s]econd, we consider whether the proposed
> initiative 'express[es] an operational relatedness among
> its substantive parts that would permit a reasonable voter
> to affirm or reject the entire petition as a unified
> statement of public policy'" (citation omitted).

Id., quoting Hensley v. Attorney Gen., 474 Mass. 651, 658

(2016).

The provisions of the short-form petitions are clearly

sufficiently coherent and operationally related because they

have only a single function:  to prevent drivers from being

deemed "employees" under G. L. cc. 149, 151, 151A, and 152.  The

two functions of the long-form petitions are also sufficiently

coherent and operationally related.  Excluding drivers from the

benefits employees receive under existing laws is operationally

related to giving them benefits as nonemployees under the

proposed law; the two functions have the common purpose of

establishing the terms of the driver-company relationship.  We

see no risk that voters would be unable to affirm or reject each

petition as a whole; each petition is sufficiently coherent to

be voted on "yes" or "no" by the voters.  See Colpack, 489 Mass.

at 815; Dunn v. Attorney Gen., 474 Mass. 675, 682 (2016)

(operational relatedness satisfied where proposed law's

"provisions share a common purpose and are related in the accomplishment of that purpose").

Although the five petitions before us have the same general goal as the two petitions examined in El Koussa v. Attorney Gen., 489 Mass. 823 (2022) (El Koussa I), they do not contain the unrelated provisions seeking to abrogate companies' tort liability to third parties that led us to reverse the Attorney General's certifications of those earlier petitions.

The plaintiffs argue that Version B "inappropriately asks voters for an exemption from the entirety of Massachusetts law" and on that basis violates art. 48. Although there is no doubt that Version B would work a change across the entirety of our General and Special Laws, "[a] measure does not fail the relatedness requirement just because it affects more than one statute, as long as the provisions of the petition are related by a common purpose." Albano v. Attorney Gen., 437 Mass. 156, 161 (2002). That is the situation we confront here; Version B seeks to ensure that drivers will not be classified as employees under any existing law. Despite the reach of Version B, its provisions share a single common purpose: establishing and defining the relationship between the drivers and the companies.

The plaintiffs also argue that the long-form petitions "contain prohibited sweeteners" by pairing unrelated popular provisions (benefits) with unpopular ones (depriving drivers of

the rights, privileges, and protections enjoyed by employees). Logrolling is the prohibited "practice of including popular unrelated provisions with unpopular ones to ensure the passage of those provisions that would not otherwise garner the necessary votes."  Clark v. Attorney Gen., 494 Mass. 187, 196 (2024).  But even accepting the plaintiffs' contention that providing drivers with some benefits is "designed to allay the fears of concerned voters and sway support in favor of the more objectionable [aspects of the] proposals," that alone is not enough to constitute prohibited logrolling.  See id.  "[F]or there to be logrolling . . . , the so-called popular and unpopular items must be unrelated," and we are particularly attentive when the unpopular items are concealed.  Id.  Neither concern is present here.  As we have already discussed, the benefits are part and parcel of the petitions' purpose of defining the relationship between the drivers and the companies. And where the description of the details of those benefits consumes the bulk of the petitions, it can hardly be said that they are concealed.

Finally, the plaintiffs challenge the "highly technical legal language" and long length of the petitions.  It is true that the petitions before us now are "dense" in the sense that they are detailed -- particularly with respect to the description of benefits they seek to create.  But art. 48 does

not prohibit dense or detailed language in and of itself; what is prohibited is the use of language that obscures from voters the meaning or operation of a petition. See El Koussa I, 489 Mass. at 829 (controversial unrelated provisions should not be concealed "in murky language" as "way of burying" them). Where, as here, a petition seeks to establish a complicated scheme of benefits and entitlements, it should be described in as much detail as required to permit voters to understand all its features. The fact that the resulting description is dense or uses technical or legal language does not alone bar a conclusion that the petition satisfies the requirements of art. 48. Contrast id. at 828 (holding petitions violated relatedness requirement where they buried at least two substantively distinct policy decisions in obscure language).

2. Summaries. The plaintiffs argue that the Attorney General's summaries are not fair, as required by art. 48, because they do not sufficiently detail the implications of classifying drivers as nonemployees and do not refer to the statutory protections that the petitions would displace.[10] Article 48 requires the Attorney General to prepare a summary of

_____

[10] Given the proponents' representation that only one petition will be put on the ballot, we do not -- and need not -- reach the plaintiffs' additional contention that the summaries do not distinguish between the multiple petitions, thereby depriving voters of context and of the ability to distinguish among the five versions.

each ballot measure that is not only fair but also concise. Art. 48, The Initiative, II, § 3, as amended by art. 74. In reviewing a summary, "we give deference to the Attorney General's exercise of discretion . . . and will not substitute our judgment for that of the Attorney General's over a matter of degree" (quotations and citation omitted). Anderson v. Attorney Gen., 490 Mass. 26, 32 (2022). For a summary to be fair, it "must not be partisan, colored, argumentative, or in any way one sided, and it must be complete enough to . . . giv[e] the voter . . . a fair and intelligent conception of the main outlines of the measure" (citation omitted). Id. at 31. A summary need not be a "comprehensive legal analysis of the measure." Id., quoting Hensley, 474 Mass. at 660. Here, the Attorney General's summaries "closely track[] the language of the proposed [acts and] amendment[s]." Anderson, 490 Mass. at 33.

The long-form summaries follow the substance and organization of the long-form petitions, and accurately describe them. As to Version B, the Attorney General's summary gives the following overview statement:

> "This proposed law would specify that rideshare and delivery drivers who accept requests through an online-enabled application are not 'employees' and that rideshare and delivery companies are not 'employers' for purposes of Massachusetts laws. This proposed law would also specify alternative minimum compensation and benefits for rideshare and delivery drivers."

The summary then has two additional pages outlining the alternative minimum compensation and benefits the drivers would receive.  The summaries of the other long-form petitions state that the proposal would modify "certain Massachusetts laws regarding workplace conditions, minimum wages, unemployment insurance, and workers' compensation."  Like Version B, they also contain an additional two-page description of the alternative minimum compensation and benefits the drivers would receive.

The short-form summaries likewise follow the substance and organization of the short-form petitions.  The summary of Version F contains an over-all description that

> "This proposed law would specify that rideshare and delivery drivers who accept requests through an online-enabled application are not 'employees' for purposes of certain Massachusetts laws regarding workplace conditions, minimum wages, unemployment insurance, and workers' compensation.  This proposed law would also specify that rideshare and delivery companies are not 'employers' for purposes of those laws."

Version I contains an almost identical description but states that the proposed law would apply "for purposes of certain Massachusetts labor and employments laws, including laws regarding workplace conditions, minimum wages, unemployment insurance, and workers' compensation."  In addition, the short-form summaries describe the so-called rights the drivers would receive under the proposed new law:

"The proposed law would apply to drivers for rideshare and delivery companies who use digital applications and who are (1) not required to work specific days or hours; (2) not required to accept specific requests; (3) not restricted from working with multiple rideshare or delivery companies; and (4) not restricted from working in any other lawful occupation or business."

Although it is true, as the plaintiffs point out, that none of the summaries lays out all of the implications of classifying drivers as nonemployees nor do they make detailed references to the statutory protections being displaced, the summaries are not required to explain the full sweep of the potential legal ramifications at that level of detail. See Anderson, 490 Mass. at 34. It is important in this context to remember that art. 48 requires the Attorney General only to draft a fair and concise summary; it does not empower the Attorney General to advocate for or against a petition or to intrude into the important educational and advocacy role proponents and opponents of the petitions have "to the voters in the public discourse leading up to election day." Hensley, 474 Mass. at 663 n.19.

Conclusion. We remand the case to the county court for entry of a declaration that the Attorney General's certifications and summaries comply with the requirements of art. 48. However, we retain jurisdiction to revisit our rulings and conclusions and, if appropriate, to withdraw this opinion in the event the proponents seek to place more than one petition on the November ballot.

So ordered.